OPINION OF THE COURT
Per Curiam.
Petitioners are nursing homes and a representative organization of nursing homes, which participate in the State’s Medicaid reimbursement program. In separate CPLR article 78 proceedings, they challenged respondent Commissioner’s 1989 promulgation and application of a regulation (10 NYCRR 86-2.10 [c] [3] [l] [1]; and [d] [4] [ii] [a], collectively termed "the base price reduction regulation”) that reduced the base prices to help offset a portion of the increased reimbursement for nurses’ salaries. As a result, certain nursing homes, including the individual petitioners, experienced a decrease in the amount of reimbursement received.
Reimbursement is calculated under the Resource Utilization Group-II methodology adopted by the State in 1986. Under that formula, nursing homes are reimbursed at a per-patient, *330 per-day rate incorporating four cost components: direct, indirect, capital and noncomparable. The reimbursement rates are based on a facility’s allowable operating costs in 1983, designated the base year, "trended forward” to account for inflation. These base year costs are used to set a maximum or "ceiling” price and a minimum or "base” price for each facility. If a facility’s costs exceed its ceiling price, that facility is reimbursed only for the ceiling price, trended forward for inflation; if its costs are lower than the base price, the facility is reimbursed for the base price, similarly trended forward. If a facility’s costs fall between the ceiling and base prices, it is reimbursed for its actual allowable 1983 costs, trended forward.
Thus, a nursing home that keeps its actual costs below the base price receives the "bonus” of reimbursement at the base price level, while a facility that allows its actual costs to rise above the ceiling price is penalized. The 1989 base price reduction regulation lowered the base price used in calculating the direct and indirect cost components of the reimbursement rate. As a result, a number of facilities that had formerly been below base and receiving a reimbursement bonus, no longer fell into the below-base category. These facilities were reimbursed in 1989 and subsequent years only for their actual allowable costs. An additional number of facilities, although still below base, received smaller bonuses because the differential between their actual costs and the new, lower base price was decreased.
Although some petitioners point to increases in the shortfall between their operating expenses and their Medicaid reimbursement, and to increased operational losses, the fact remains that no nursing home receives less than its actual allowable 1983 costs, trended forward for inflation. The base price reduction regulation merely reduced the amount of reimbursement some nursing homes were receiving in excess of those adjusted costs.
Petitioners challenged the base price reduction regulation as arbitrary, capricious and without rational basis. The New York State Health Facilities Association petitioners additionally contended that the regulation violated both the procedural and substantive mandates of the Federal Boren Amendment (42 USC § 1396a [a] [13] [A]),* which requires that *331 Medicaid reimbursement rates be "reasonable and adequate to meet the [necessary] costs [of] efficiently and economically operated facilities.” Petitioner Consolation Nursing Home raised the related contention that the regulation violated sections 2807 (3) and 2808 (3) of the New York State Public Health Law, which incorporate the Boren Amendment standard.
Supreme Court invalidated the base price reduction regulation in both cases, and in Matter of New York State Health Facilities Assn., also found that the regulation and its promulgation violated the substantive and procedural standards of the Boren Amendment. The Appellate Division, although deeming it more appropriate to treat this portion of each petition as an action for a declaratory judgment, affirmed the invalidation of the regulation. The Court concluded in Matter of Consolation Nursing Home that the regulation lacked a rational basis because "respondents failed to conduct empirical studies to verify that below-base facilities were actually, rather than hypothetically, receiving reimbursement above their actual costs,” and because the regulation was promulgated without " 'a measured period of empirical documentation’ ” (194 AD2d 149, 153-154). The Court found this conclusion determinative of the later appeal in Matter of New York State Health Facilities Assn. (199 AD2d 752, 753), and therefore did not reach petitioners’ Boren Amendment claims.
The standard for judicial review of an administrative regulation is whether the regulation has a rational basis and is not unreasonable, arbitrary or capricious (see, Matter of New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166; Matter of Bates v Toia, 45 NY2d 460, 464). An administrative agency’s exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise (see, Matter of Memorial Hosp. v Axelrod, 68 NY2d 958, 960; 5 Davis, Administrative Law § 29:3, at 343 [2d ed]). Accordingly, the party seeking to nullify such a regulation has the heavy burden of showing that the *332 regulation is unreasonable and unsupported by any evidence (see, Matter of New York State Health Facilities Assn. v Axelrod, 77 NY2d 340, 349-350; Matter of Society of N. Y. Hosp. v Axelrod, 70 NY2d 467, 473; cf., Matter of Jewish Mem. Hosp. v Whalen, 47 NY2d 331, 343).
Although documented studies often provide support for an agency’s rule making, such studies are not the sine qua non of a rational determination. As we have previously stated, in a rate-fixing decision “the commissioner, of course, is not confined to factual data alone but also may apply broader judgmental considerations based upon the expertise and experience of the agency he heads” (see, Matter of Catholic Med. Ctr. v Department of Health, 48 NY2d 967, 968-969).
Accordingly, in each case the order to the extent appealed from should be reversed, with costs, and the matter remitted to Supreme Court, Albany County, for further proceedings under the appropriate standard of judicial review and, if necessary, for determination whether the reimbursement rates after implementation of the base price reduction regulation are adequate to meet the standards of the Boren Amendment and the Public Health Law.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur in Per Curiam opinion.
In each case: Order, insofar as appealed from, reversed, with costs, and matter remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein.

 The State is reimbursed by the Federal Government for a portion of its *331 Medicaid reimbursement expenditures. The State’s receipt of Federal funds is conditioned upon compliance with the requirements of the Boren Amendment. Under the Amendment, when a State makes significant changes in either the standards or methods for determining Medicaid payment rates, it must make findings and give assurances to the Federal Health Care Financing Administration that the new rates continue to meet the Amendment’s substantive standards.