[627 NYS2d 1020]

In the Matter of 470 NEWPORT ASSOCIATES, Petitioner, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.

Third Department, May 25, 1995

## APPEARANCES OF COUNSEL

*Hutton & Solomon,* New York City *(Kenneth I. Moore, Stephen L. Solomon* and *Roy F. Hutton* of counsel), for petitioner.

*Dennis C. Vacco, Attorney-General,* Albany *(Julie S. Mereson* and *Peter G. Crary* of counsel), for Commissioner of Taxation and Finance of the State of New York, respondent.

## OPINION OF THE COURT

WHITE, J.

Petitioner, a limited partnership, acquired an apartment building located in the Village of Harrison, Westchester County, on September 15, 1976 for $5,750,000. On November 10, 1982, it sold the building to a cooperative housing corporation (hereinafter the CHC) for $15,773,302.20. A part of this consideration consisted of 140,030 unsold shares of the CHC valued at $6,935,162.57. Between March 28, 1983, the effective date of Tax Law article 31-B, and September 26, 1986, petitioner sold 45,695 shares[1] to various individuals who became tenant/shareholders of the CHC. Petitioner did not pay any real estate transfer gains tax on these sales as it claimed that its original purchase price[2] exceeded the consideration it received for the shares.[3]

As the result of an audit it conducted in 1987, the Department of Taxation and Finance (hereinafter the Department), found that petitioner had a gain of $4,455,827,[4] and issued a

---

1. These shares represent 32.6% of the total offering of 140,030 shares, and the estimated consideration, per audit, for these shares was $4,832,602.

2. "Original purchase price" is defined as "the consideration paid or required to be paid by the transferor * * * to acquire the interest in real property" (Tax Law § 1440 [5] [a] [i]).

3. Petitioner's calculations are as follows:

| | |
|---|---:|
| consideration for shares | $4,832,602 |
| less brokerage fees | 481,797 |
| | $4,350,805 |
| less original purchase price | 5,146,828 |
| ($15,773,302 × 32.63%) | |
| Gain | 0 |

4. The Department's calculations are as follows:

| | |
|---|---:|
| consideration for shares | $4,832,602 |
| mortgage indebtedness | 2,186,405* |
| gross consideration | $7,019,007 |
| less brokerage fees | 481,797 |
| | $6,537,210 |

Original Purchase Price

| | |
|---|---:|
| acquisition cost | $5,750,000 |
| acquisition expenses | 35,617 |
| capital improvements | 379,418 |
| cooping expenses | 153,365 |
| TOTAL | $6,318,400 |

notice of determination of tax due to petitioner in the amount of $445,581 plus a penalty of $72,634 and interest of $40,174, for a total amount due under the transfer gains tax law of $558,389. Thereafter, an Administrative Law Judge (hereinafter ALJ) denied petitioner's petition for a redetermination or revision of the assessment. Petitioner filed exceptions thereto which led to a decision by respondent Tax Appeals Tribunal (hereinafter the Tribunal) affirming the ALJ's determination. Petitioner then commenced this proceeding pursuant to CPLR article 78 seeking review of the Tribunal's determination.

■ Tax Law § 1441 imposes a 10% tax on gains derived from the transfer of real property. "Gain" is determined by subtracting the original purchase price of the property from the consideration received on its transfer (Tax Law § 1440 [3]). When real property is converted into cooperative ownership pursuant to a plan accepted by the Attorney-General (General Business Law § 352-e), the property is transferred by the owner, known as a sponsor or transferor, to a CHC. The CHC sells shares to individual unit purchasers and the shares unsold at the time of the transfer are issued to the transferor, who subsequently sells them to individual unit purchasers. Under this plan, because the CHC is merely a conduit through which ownership of individual units are transferred by the transferor to the tenant/shareholders, the transfer of the real property to the CHC by the transferor is not an event requiring the payment of the gains tax (20 NYCRR former 590.33, renum 590.34, eff Nov. 9, 1994). Instead, the taxable event is deemed to be the transferor's sale of the shares to the tenant/shareholder (see, Tax Law § 1442 [b]; see also, Mayblum v Chu, 67 NY2d 1008, 1009; Matter of 1230 Park Assocs. v Commissioner of Taxation & Fin. of State of N. Y., 170 AD2d 842, lv denied 78 NY2d 859). Thus, since a cooperative conversion is viewed as a single transfer, gain is measured by the difference between the consideration received upon the sale of the shares and the transferor's cost of acquiring the property prior to its transfer to the CHC (see, Matter of Normandy Assocs., Tax Appeals Tribunal, File No. 804333, Mar. 23, 1989).

In the event the transferor, be it a partnership, corporation or other entity, transfers the shares of the CHC to its owners in proportion to their ownership interest, these transfers will be nontaxable; however, the owners' original purchase price is

| | |
|---|---|
| Original purchase price allocated to subject sales ($6,318,400 × 32.63%) | $2,061,883 |
| Gain on shares ($6,537,210 − $2,061,883) | $4,455,827 |

*Petitioner has withdrawn its claim that the mortgage indebtedness assumed by the CHC was not an item of consideration.

the same as the transferor's (20 NYCRR former 590.35 [f], renum 590.36 [f], eff Nov. 9, 1994). An exception is made, however, if such transfers occurred before March 29, 1983, in which case the owners' original purchase price is "stepped up" to the value of the shares at the time of the transfers (ibid.).

Petitioner points out that because of the "exception" for pre-March 29, 1983 transfers, its original purchase price is different from that of its partners on the sale of the very same stock of the CHC. It maintains that this disparate treatment is discriminatory in that it denies it equal protection of the law. For that reason and because it contends that the "exception" is arbitrary and capricious, petitioner urges us to annul the Tribunal's determination.

The Federal and State Constitutions do not require that all taxpayers be treated the same (see, Foss v City of Rochester, 65 NY2d 247, 256). Differences in treatment of taxpayers will survive an equal protection challenge so long as the classification rationally furthers a legitimate State interest (see, Nordlinger v Hahn, 505 US 1, 11-12, 112 S Ct 2326, 2332; Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915). Because this standard is particularly deferential in the field of taxation, legislatures have especially broad latitude in creating classifications and distinctions in taxing statutes (see, Nordlinger v Hahn, 505 US, supra, at 11-12, 112 S Ct, supra, at 2332).

Applying these principles here, we find that the challenged regulation does not deny petitioner equal protection of the law as there are several rational policy reasons justifying the different treatment accorded petitioner and its owners. First, when the Legislature enacted Tax Law article 31-B, it provided that the gains tax would not apply to any transfer made on or before its effective date of March 28, 1983 (see, L 1983, ch 15, § 184 [n], as amended by L 1983, ch 16, § 8). The challenged regulation advances this legitimate interest by shielding that portion of the partner's gain which preceded the effective date of Tax Law article 31-B from the gains tax.

Second, allowing petitioner to step up its original purchase price of the property to its fair market value at the time of transfer to the CHC would have the effect of treating the cooperative conversion as two transactions, i.e., the transfer of the realty to the CHC and the transfer of shares to individual unit purchasers, thereby contravening the well-settled principle that a cooperative conversion is a single transfer for gains tax purposes (see, Mayblum v Chu, 67 NY2d 1008, 1009, supra).

The foregoing analysis also negates petitioner's claim that the "exception" is arbitrary and capricious (see, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326).

■ Petitioner's further argument, that the different tax consequences arising from the sale of the CHC shares to tenant/shareholders (20 NYCRR former 590.35 [a]) and the sale of shares of a noncooperative corporation that owns real estate (20 NYCRR former 590.52) violates its equal protection rights, lacks merit since the Court of Appeals has held that the Legislature may constitutionally apply a different tax treatment to condominium and cooperative developers than it applies to other types of real estate developers (see, Trump v Chu, 65 NY2d 20, 28, supra).

■ Petitioner's last argument concerns the penalty imposed upon it. Tax Law § 1446 (2) (b) requires that a penalty be imposed upon a taxpayer who fails to timely pay the transfer gains tax. However, if respondent Commissioner of Taxation and Finance determines that the failure to pay was due to reasonable cause and not to willful neglect, the penalties can be abated (ibid.). Petitioner contends that it had reasonable cause for underpaying the gains tax since the issue of what constituted "original purchase price" was unclear at the time it was selling the CHC shares.

We disagree since the Department's Publication 588, dated August 1983, relating to the gains tax states that "[t]he original purchase price used in this calculation [the gain on the sale of shares] is the original purchase price * * * in the hands of the realty transferor". Moreover, it appears that petitioner's attorney in September 1983 advised it of the Department's position. Accordingly, inasmuch as petitioner could have readily ascertained its tax liability, there is no reason to disturb the Tribunal's determination sustaining the penalty imposed (see, Matter of Ross-Viking Mdse. Corp. v Tax Appeals Tribunal, 188 AD2d 698, 700; Matter of LT & B Realty Corp. v New York State Tax Commn., 141 AD2d 185, 187).

CARDONA, P. J., MERCURE, CASEY and SPAIN, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.