OPINION OF THE COURT
Joseph Harris, J.
In this CPLR article 78 proceeding, petitioners move by order to show cause for an order: (1) vacating, voiding and annul *782 ling the emergency regulation adopted by the New York State Commission of Correction relating to double occupancy housing units, which regulation was filed as an emergency rule on May 2, 1995, on the grounds that such emergency rule does not conform with the provisions of the State Administrative Procedure Act; (2) vacating, voiding and annulling the aforesaid emergency regulation on the grounds that it is arbitrary and capricious because it cannot be implemented consistent with existing regulations; and (3) upon declaring null and void and vacating the aforementioned rule and regulation, enjoining the Department of Correctional Services, its Acting Commissioner and its employees from implementing double occupancy housing units under their jurisdiction until such time as lawful and valid regulations permitting such practice are duly promulgated.
Respondents oppose the petition and interpose as objections in point of law that: (1) the petitioners’ claims are moot (CPLR 3211 [a] [7]);* (2) the petition fails to state a cause of action; and (3) the petition, to the extent that it seeks to challenge the merits of double celling, is nonjusticiable (CPLR 3211 [a] [2]).
On or about April 4, 1995 the respondent Commission of Correction considered, voted upon and passed a proposed rule change to 9 NYCRR part 7621 which would authorize double occupancy housing units within correctional facilities.
On or about April 10, 1995 the Commission of Correction prepared and executed a notice of emergency adoption and proposed rule making to authorize double occupancy housing units in correctional facilities.
In accordance with Executive Order No. 2 (9 NYCRR 5.2), the emergency adoption and proposed rule making was approved by the Governor of the State of New York and, on or about May 2, 1995, the emergency rule was filed.
*783 State Administrative Procedure Act § 202 (6) provides, in relevant part, as follows:
"6. Notice of emergency adoption, (a) Notwithstanding any other provision of law, if an agency finds that the immediate adoption of a rule is necessary for the preservation of the public health, safety or general welfare and the compliance with the requirements of subdivision one of this section would be contrary to the public interest, the agency may dispense with all or part of such requirements and adopt the rule on an emergency basis.
"(b) Unless otherwise provided by law, such emergency rule shall not remain in effect for longer than ninety days after being filed with the secretary of state unless within such time the agency complies with the requirements of subdivision one of this section and adopts the rule pursuant to the provisions of subdivision five of this section, provided, however, if such emergency rule is readopted prior to the expiration of such ninety day period such readoption and any subsequent re-adoptions shall remain in effect for no longer than sixty days.
"(c) An emergency rule which is in regard to security authorizations, corporate or financial structures or reorganization thereof, and for which statute does not require that a public hearing be held prior to adoption, shall not expire pursuant to the provisions of paragraph (b) of this subdivision if the agency finds that the purpose of the rule would be frustrated if subsequent notice procedures were required.
"(d) A notice of emergency adoption shall:
"(i) cite the statutory authority, including particular sections and subdivisions, under which the rule is adopted;
"(ii) state whether the notice shall also constitute a notice of proposed rule making for the purposes of subdivision one of this section, and if so, give the date, time and place of any public hearing or hearings which are scheduled;
"(iii) state whether the notice shall also constitute a notice of revised rule making for the purposes of subdivision four-a of this section, and if so, include all information required by such subdivision; and
"(iv) contain the findings required by paragraphs (a) and (c) of this subdivision and include a statement fully describing the specific reasons for such findings and the facts and circumstances on which such findings are based. Such statement shall include, at a minimum, a description of the nature and, if applicable, location of the public health, safety or general welfare *784 need requiring adoption of the rule on an emergency basis; a description of the cause, consequences, and expected duration of such need; an explanation of why compliance with the requirements of subdivision one of this section would be contrary to the public interest; and an explanation of why the current circumstance necessitates that the public and interested parties be given less than the minimum period for notice and comment provided for in subdivision one of this section. ” (Emphasis supplied.)
In response to the requirements of State Administrative Procedure Act § 202 (6) (d) (iv) respondents provided the following: "The Department of Correctional Services is over capacity and needs additional beds to confine statutorily committed individuals. This amendment is necessary to address the capacity shortfall.”
Petitioners’ first cause of action alleges that the statement does not satisfy the requirements of State Administrative Procedure Act § 202 (6) (d) (iv) in that it fails to specify: (1) facts or circumstances tending to show that immediate adoption of this rule is necessary or that compliance with regular rule-making procedures would be contrary to the public interest; and (2) the cause, consequence or expected duration of such alleged threat to the public health, safety and general welfare.
State Administrative Procedure Act § 202 (6) (d) (iv) requires, at a minimum, an agency seeking an emergency rule adoption to fully articulate in writing the circumstances which give rise to the adoption on an emergency basis so as to limit this method of rule making to genuine emergencies. The Legislature was attempting to stop the practice of using emergency rule making to avoid the notice and comment period otherwise required by the State Administrative Procedure Act. As stated in the sponsor’s memorandum, "[u]nder this legislation, an agency would have to disclose the specific reason as to the need to adopt the emergency rule and why it was necessary to forgo the required notice and comment period that is required by SAPA.” (Bill Jacket, L 1990, ch 850, Sponsor’s Mem, Assemblyman Sanders, Assembly Bill 10271-A, at 3.)
Because of the respondents’ failure to follow the State Administrative Procedure Act "statement” requirement fully describing the specific reasons for such findings and facts, the record before this court is devoid of any finding of immediate necessity, emergency, or undue delay. While prison overcrowding may well be a difficult challenge for respondents, there is a complete absence of showing that it must be dealt with by *785 double celling prior to the period of public notice and comment allowed by State Administrative Procedure Act. Moreover, the notice of adoption did not explain in any detail why compliance with normal rule-making procedure would be contrary to the public interest or why the current circumstances necessitate the use of emergency rule-making procedure. In short, the respondents have failed to comply with the requirements of the State Administrative Procedure Act.
State Commission of Correction (SCOC) Rules found at 9 NYCRR provide for minimum square footage per inmate for individuals incarcerated at State correctional facilities. Section 7621.4 provides, in relevant part, that each individual occupancy housing unit shall contain at least 60 square feet of floor space. Section 7621.6 (as renumbered by the emergency rule; formerly § 7621.5) provides, in relevant part, that each multiple occupancy housing unit shall provide a minimum of 50 square feet of floor space per inmate. Section 7621.5 (the emergency rule challenged herein) establishes double occupancy housing units without any reference to minimum square footage.
Petitioners’ second cause of action alleges that the emergency rule is arbitrary and capricious in that it cannot be implemented consistent with existing rules. Petitioners allege that since a double occupancy housing unit would house more than one inmate, the 50 square feet of floor space per inmate requirement found in the multiple occupancy housing unit regulation (9 NYCRR 7621.6) applies.
The courts cannot interfere unless there is no rational basis for the exercise of discretion or the action complained of is arbitrary and capricious. (Matter of Pell v Board of Educ., 34 NY2d 222, 230-231.) "The arbitrary or capricious test chiefly 'relates to whether a particular action should have been taken or is justified...and whether the administrative action is without foundation in fact.’ * * * Arbitrary action is without sound basis in reason and is generally taken without regard to the facts.” (Supra, at 231.) "Rationality is what is reviewed under * * * the arbitrary and capricious standard.” (Supra, at 231.)
Moreover, the construction given to statutes and regulations by the agency responsible for their administration should be given great weight, in light of the recognized expertise and competence of the administering agency, and should be upheld if not irrational or unreasonable. (Stevens v Perales, 155 AD2d 329; Matter of Yablonsky v Perales, 136 AD2d 550; Conrad v Hackett, 149 Misc 2d 56.)
*786 While respondents claim that it was not their intention to establish a minimum square footage for double occupancy housing units, the challenged rule neither specifically states that nor does it except double occupancy housing units from the minimum square footage provisions of multiple occupancy housing units contained in 9 NYCRR 7621.6.
The establishment of double occupancy housing units without any reference to minimum square footage cannot be implemented consistent with the requirement that multiple occupancy housing units (i.e., those which house more than one inmate) contain a minimum of 50 square feet of floor space per inmate. Moreover, inasmuch as there is no rational basis for establishing a minimum square footage requirement for single and multiple occupancy housing units while having no such requirement for double occupancy housing units, said distinction in treatment is arbitrary and capricious (see, Matter of Pell v Board of Educ., supra).
Accordingly, the subject regulation is hereby vacated, voided and annulled on the grounds that it fails to conform with State Administrative Procedure Act § 202 (6) and on the further ground that it is arbitrary and capricious in that it cannot be implemented consistent with existing regulations and there is no rational basis for the distinction in treatment.
Petitioners’ request for an order enjoining the Department of Correctional Services from implementing double occupancy housing units until such time as lawful and valid regulations permitting same are promulgated is hereby granted.

 Respondents assert that the adoption of a final rule renders petitioners’ challenge to the emergency rule moot. Petitioners contend that the propriety of the respondents’ action should be judged on the grounds as they existed when the action was taken.
In dealing with an agency determination, a reviewing court must judge the propriety of the action solely on the grounds invoked by the agency at the time it took the action (see, Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753). Moreover, petitioners’ claim that the emergency rule is arbitrary and capricious because it is inconsistent with the rules promulgated by respondents with respect to the minimum square footage requirement per inmate remains unaddressed in the final rule.
Accordingly, petitioners’ claims are not moot.