OPINION OF THE COURT
George B. Ceresia, Jr., J.
Petitioners commenced this CPLR article 78 proceeding requesting an order vacating, voiding and annulling a final rule adopted by the respondent New York State Commission of Correction (the Commission) providing for "double occupancy housing units” in State prisons, which regulation was filed September 19, 1995 and became effective October 4, 1995. The permanent rule — 9 NYCRR 7621.5 — essentially authorizes double occupancy housing units which involves housing two inmates in a cell designed for single occupancy, i.e., double celling, subject to certain restrictions in an effort to address prison overcrowding. The notice of emergency adoption authorizing double celling was filed May 2, 1995, contemporaneously with the notice of proposed rule making (State Administrative Procedure Act § 202 [6] [d] [ii]). In a prior article 78 proceeding, Supreme Court (Harris, J.) ruled the emergency regulation to be invalid on the grounds that (1) respondents failed to comply with the State Administrative Procedure Act and (2) the emergency regulation was irrational and thus arbitrary and capricious (Matter of Law Enforcement Officers Union v State of New York, 168 Misc 2d 781 [Sup Ct, Albany County 1995] [L.E.O.U. v State I], appeal pending). Respondents’ notice of ap *146 peal has apparently stayed the injunction granted by Justice Harris prohibiting implementation of the double celling emergency regulation.
Petitioners now argue that the final permanent rule is similarly arbitrary and capricious in that it cannot be implemented consistent with other existing regulations; that principles of res judicata preclude relitigating identical issues decided in L.E.O.U. v State I (supra); and that the prior judicial determination that respondents violated the State Administrative Procedure Act in the emergency rule making process renders invalid the permanent rule making process. Respondents defend the permanent regulation as (1) rational and (2) having been passed in full compliance with the State Administrative Procedure Act’s nonemergency rule making process (§ 202), and (3) contend that the issues presented herein related to the permanent rule are not foreclosed by the decision in L.E.O.U. v State I (supra) which addressed only the emergency rule. Respondents also raise objections in point of law relating to, inter alia, standing, justiciability and ripeness.
Background
After evaluating the practice of double celling, the Commission on May 2, 1995 simultaneously filed a notice of emergency adoption and notice of proposed rule making amending 9 NYCRR part 7621, by amending and renumbering[1] certain sections and adding a new section 7621.5 authorizing the defendant Department of Correctional Services (DOCS) to establish double celling in State correctional facilities. A "double occupancy housing unit” is "an individual occupancy housing unit equipped to accommodate two inmates” (§ 7621.5 [a] [new]). Conversion of each single unit to a double unit requires Commission approval (§ 7621.5 [h]). Petitioners challenged the emergency regulation in the prior article 78 proceeding commenced July 7, 1995. Thereafter, respondents filed a notice of emergency adoption and revised proposed rule making which detailed the reasons underlying the finding of necessity of emergency adoption, extensively assessed public comments, *147 and. made substantial revisions in the rule[2] (see, State Administrative Procedure Act § 202 [4-a] [notice of revised rule making]). That revision was filed on July 21, 1995 — also the return date for the first article 78 proceeding — and published August 9, 1995. The revised proposed rule was adopted as the final rule without change, and filed September 1995. It became permanently effective October 4, 1995.
Prior Article 78 Proceeding
Petitioners’ verified petition in L.E.O.U. v State I (supra)— filed and served prior to the revision of the proposed rule— challenged only the emergency adoption of the double celling rule, and was never amended to incorporate a challenge to the revised or final /permanent rule. While that court was apprised of subsequent developments relating to the rule, i.e., revision and final adoption, they were only addressed on respondents’ mootness claim, i.e., that the adoption of a final rule rendered the challenge to the emergency rule moot, which claim Justice Harris rejected (see, L.E.O.U. v State I, 168 Misc 2d, at 782, n, supra). Addressing the verified petition, that court vacated and annulled the emergency regulation and enjoined its implementation concluding that respondents failed to comply with the State Administrative Procedure Act requirements that it articulate the specific reasons for its findings of fact and circumstances of immediate necessity for adoption of a rule on an emergency basis, to justify avoidance of advance notice and comment (State Administrative Procedure Act § 202 [6] [a], [d] [iv]).[3] That court also concluded that "establishment of double occupancy housing units without any reference to minimum square footage cannot be implemented consistent with the requirement [see, 9 NYCRR 7621.6] that multiple occupancy housing units (i.e., those which house more than one inmate) *148 contain a minimum of 50 square feet of floor space per inmate” (L.E.O.U. v State I, supra, at 786). Minimum square footage per inmate for individual occupancy units is 60 square feet of floor space (9 NYCRR 7621.4 [a]). In response to respondents’ claim — reiterated in this special proceeding — that it was not their intention to establish a minimum square footage for double occupancy housing units, Justice Harris concluded that the challenged emergency rule "neither specifically states that nor does it except double occupancy housing units from the minimum square footage provisions of multiple occupancy housing units [9 NYCRR 7621.6]” (supra, at 786). The court concluded "there is no rational basis for establishing a minimum square footage requirement for single and multiple occupancy housing units while having no such requirement for double occupancy housing units” and thus the "distinction in treatment is arbitrary and capricious” {supra, at 786) and vacated and annulled the emergency rule.
Challenge to Final Rule as Arbitrary and Irrational
Petitioners now challenge the final regulation as similarly arbitrary and capricious, and incapable of implementation consistent with existing rules. An "administrative regulation is to be upheld if there is any evidence in the record before the agency that could support — i.e., constitute a rational basis for — the action under review” (Matter of Brodsky v Zagata, 222 AD2d 48, 51, affg 167 Misc 2d 175; see also, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326, 331-332). Petitioners allege that since double occupancy housing units would house more than one inmate, the 50 square feet of floor space per inmate requirement for multiple housing units (9 NYCRR 7621.6) applies, and that the final rule (§ 7621.5) authorizing double celling without provision for minimum per inmate square footage is irrational and arbitrary.
The revised rule adopted as the final rule did not correct or address the omission of minimum square footage per inmate in the emergency rule. Accordingly, the conclusion reached by Justice Harris that the emergency regulation is irrational for failure to provide a minimum square footage requirement is equally applicable to the final rule. While respondents proffered an extensive explanation in the revised notice for lack of minimum square footage per inmate in double cells, this omission was not addressed in the final rule.
Respondents claim that "double occupancy housing units” do not constitute a "multiple occupancy housing unit” requiring a *149 minimum of 50 square feet per inmate. They also argue that the final rule implicitly incorporated the individual occupancy housing unit per inmate square footage of 60 square feet (9 NYCRR 7621.4) into the double celling rule (9 NYCRR 7621.5) to allow two inmates in that space. Respondents also rely upon the Commission’s case-by-case consideration of units for conversion from single to double occupancy (see, 9 NYCRR 7621.5 [h]) which respondents contend involves consideration of the overall conditions of confinement of which square footage is only one factor. As to this latter contention, the court notes that significantly, the rule does not delineate factors to be considered in the conversion determination (9 NYCRR 7621.5 [h]).
 It is true that no constitutional minimum square footage per inmate in double cells has been established and the courts have instead looked to the over-all conditions of confinement (see, Rhodes v Chapman, 452 US 337, 346-348 [upheld double celling in question as not cruel and unusual punishment in violation of Eighth and Fourteenth Amendments]).[4] The court is mindful that an administrative agency’s exercise of its rule making powers and interpretation of a statute it is entrusted to enforce are accorded a high degree of judicial deference, particularly when an agency acts in the area of its particular expertise, and that the party seeking to nullify such a regulation has the heavy burden of demonstrating its irrationality (Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, supra, 85 NY2d, at 331-332). However, such deference is inappropriate where the rule is irrational or arbitrary and capricious (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 NY2d 539, 545). This court is not persuaded to diverge from the rationale employed by Justice Harris in his determination concerning the same parties on the identical issue as to the irrationality of the emergency rule in this regard. Accordingly, the court determines that the final rule shares the same infirmities as did the emergency rule and must be vacated and annulled.[5] This is especially so since the rule delineates no objective factors or stan *150 dard (see, Matter of Levine v Whalen, 39 NY2d 510, 519 [1976]) which must be used when double celling is being considered.
The court emphasizes that in annulling the final regulation it makes no judgment as to the wisdom of the policy of double celling inmates, and addresses only the justiciable question of the rationality and arbitrariness of the final regulation adopted by the Commission to implement this policy (cf, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo, 64 NY2d 233, 238-240). The Commission is clearly empowered, inter alia, to promulgate regulations establishing minimum standards for confinement (Correction Law § 45 [6]), provided it does so in a rational and constitutional manner.
State Administrative Procedure Act Compliance in Final Adoption Process
Petitioners’ third cause of action alleges that because the emergency adoption of the rule was held to violate State Administrative Procedure Act’s requirements, the entire rule making process was invalidated and the final rule was adopted in a necessarily flawed procedure. The court disagrees, finding that respondents complied with the notice, filing, publication and public comment requirements for the notice of proposed rule making, notice of revised proposed rule making and notice of adoption (State Administrative Procedure Act § 202 [1], [4-a], [5]).
The particular State Administrative Procedure Act provisions pertaining to emergency adoption of rules (§ 202 [6]) with which respondents were found to have failed to comply in L.E.U.O. v State I (supra) differ, of course, from the procedures applicable to ordinary rule making (§ 202 [1], [4-a], [5]), and the two procedures are separate. The fact that the initial notice was simultaneously a notice of emergency adoption (§ 202 [6]) and a notice of proposed rule making (§ 202 [1]) is contemplated by statute (§ 202 [6] [d] [ii]) and does not make the latter process dependent on the former, as petitioners contend. That is, the process for the emergency adoption of a rule may be flawed and the emergency rule invalidated, while the separate and *151 distinct process for final adoption may be complied with and the final rule upheld (see, e.g., Matter of Brodsky v Zagata, 222 AD2d 48, affg 167 Misc 2d 175, supra [upholding final rule repealing ban on DEBT insect repellant although two earlier emergency rules to that effect had been declared invalid based upon State Administrative Procedure Act violations and an inadequate showing of necessity for emergency action]). Petitioners do not identify any State Administrative Procedure Act provision which respondents violated, and thus their third cause of action is wholly without merit.
Standing
Respondents briefly raise, but do not develop, the issue of petitioners’ standing[6] to maintain this special proceeding. The petitioner Law Enforcement Officers Union, District Council 82, AFSCME, AFL-CIO (Council 82) represents the security services and security supervisors bargaining units, which includes State correction officers, sergeants and lieutenants employed by DOCS which provide security in State correctional facilities which double cell inmates. Petitioner Seide is chief operating officer for Council 82 empowered to act on its behalf. Petitioner McMillan is a correction sergeant and serves as staff director for Council 82. Respondents do not challenge these factual assertions.
Regarding associational standing, Council 82 is the certified bargaining representative under the Civil Service Law for correctional officers / sergeants / lieutenants, and the interests it asserts — protection of correctional employees from increased dangers from double celling — are germane to its purposes, i.e., protecting its represented employees’ conditions of employment and safety, such that the court is satisfied that it is the appropriate representative of those interests. Also, one or more of its members would have standing to sue, as the correctional employees are within the zone of interest to be protected by the double celling regulation[7] and allege their members will suffer injury and increased risk from its implementation. *152 Finally, nothing in the relief requested or the causes of action requires the participation of individual correctional officers/ sergeants /lieutenants. Accordingly, Council 82 satisfies the applicable test for associational or organizational standing and the individual petitioners have standing on behalf of Council 82 and individually (see, Matter of Dental Socy. v Carey, 61 NY2d 330, 333-335; see also, Matter of Society of Plastics Indus, v County of Suffolk, 77 NY2d 761, 775-779). Accordingly, respondents’ objection to petitioners’ standing is without merit.
Relief
Petitioners, in addition to seeking a declaration annulling the permanent rule, request an injunction prohibiting DOCS and the Commission from implementing the double celling practice. Respondents contend that even if the final rule is held to be invalid, the Commission and DOCS have the statutory authority and discretion to determine whether to double cell inmates, relying upon Correction Law §§45 and 46. Section 45 outlines the functions, powers and duties of the Commission. The Commission is authorized to "[ajdvise and assist the governor [and DOCS] in developing policies, plans and programs for improving the administration of correctional facilities and the delivery of services therein” (Correction Law § 45 [1]). The Legislature has validly vested in the Commission the power to promulgate rules and regulations "establishing minimum standards for the care, custody, correction, treatment, supervision, discipline, and other correctional programs for all persons confined in correctional facilities” (Correction Law § 45 [6] [emphasis added]; McNulty v Chinlund, 62 AD2d 682, 687 [3d Dept 1978]) and vested in the Commission the authority to judicially enforce compliance by others with such regulations (Correction Law § 46 [4]; Matter of New York State Commn. of Correction v Ruffo, 157 AD2d 987 [3d Dept 1990]). Rules which are, inter alia, irrational or arbitrary and capricious, such as the final rule authorizing double celling, are void and may not be implemented or enforced by the Commission (McNulty v Chinlund, supra, at 688). The question raised herein is whether petitioners are entitled to an injunction prohibiting "the practice of double celling” or merely an *153 injunction against implementation of the final rule,[8] that is, must respondents promulgate a valid rule in order to double house inmates or are they already reposed with that authority expressly or impliedly.
This court concludes that, in the absence of the final rule, respondents have not promulgated "minimum standards” (Correction Law § 45 [6]) governing double celling as they have for single and multiple occupancy housing units. While the practice of double celling is neither per se unconstitutional nor does it violate any statutory provisions, and the practice as applied is not within the scope of this proceeding, injunctive relief prohibiting double celling is appropriate in view of the court’s finding that on this record double celling would be inconsistent with the Commission’s regulations relating to multiple occupancy housing units minimum square footage (9 NYCRR 7621.6).[9] This is true whether double celling as it currently exists, i.e., placing two inmates in a cell designed for one, is implemented pursuant to a final rule or an agency practice. Although respondents argue that the final rule does not violate the regulations and is rational, having been unsuccessful on that point they do not argue that the practice would comply with the remaining regulations.
Accordingly, the subject final rule is hereby vacated, annulled and voided on the ground that it is arbitrary and capri *154 cious (see, L.E.O.U. v State I, supra). Petitioners’ request for an order enjoining DOCS or the Commission from implementing double occupancy housing units is hereby granted.

. Section 7621.5 was renumbered 7621.6; section 7621.6 was renumbered 7621.7; section 7621.7 was renumbered 7621.8; and section 7621.8 was renumbered 7621.9. The court will use the renumbered and not the former sections.

. Subdivision (e) of 9 NYCRR 7621.5 relating to screening inmates for double celling was amended to preclude assigning certain inmates to such cells, e.g., emotionally or mentally disturbed inmates; inmates with severe physical disabilities or with documented histories of aggressive or assaultive behavior toward other inmates; inmates with infectious/ communicable diseases; and inmates identified as possible vulnerable or victim prone or with documented history of vulnerability in the general population. Subdivision (g) of 9 NYCRR 7621.5 was amended to limit the involuntary confinement in a double occupancy housing unit to 60 days.

. Respondents offered the following specific reason underlying the finding of necessity for the notice of emergency adoption/notice of proposed rule making: "The Department of Correctional Services is over capacity and needs additional beds to confine statutorily committed individuals. This amendment is necessary to address the capacity shortfall.”

. Respondents — who are correction officers and their representatives — do not raise any constitutional objections to the double celling.

. The doctrine of collateral estoppel or issue preclusion operates where there has been a final judgment on the merits, and L.E.O.U. v State I (supra) may be used as a basis for collateral estoppel even though an appeal is pending (see, Matter of Amica Mut. Ins. Co. [Jones], 85 AD2d 727, 728 [2d Dept 1981]; Exchange Natl. Bank v Ferridge Props., 112 AD2d 33 [4th Dept 1985]; Siegel, NY Prac § 444 [2d ed]; 73 NY Jur 2d, Judgments, § 358). However, the doctrine is a flexible one and the court is not required to *150 automatically apply it even where formal prerequisites are met (see, Samhammer v Home Mut. Ins. Co., 120 AD2d 59, 62 [3d Dept 1986]). In view of the fact that L.E.O.U. v State I (168 Misc 2d 781, supra) involved an emergency rule, the court has elected not to apply the doctrine of equitable estoppel and is deciding the issue on the merits. Petitioners are not seeking to re-litigate the same cause of action or claim, and thus principles of res judicata are inapplicable (see, Matter of Reilly v Reid, 45 NY2d 24, 27).

. Respondents did not raise the issue of standing in their verified answer in the prior article 78 proceeding.

. The policy of 9 NYCRR part 7621 is stated as follows: "In order to promote a safe, secure and healthy correctional environment, there shall be a limit on the total number of inmates confined at any given time within each correctional facility” (9 NYCRR 7621.1). Since correctional employees are part of the "correctional environment” and their interests in safety in the facility certainly parallel those of the inmates, the court concludes that *152 both inmates and correctional employees are within the zone of interest to be protected by regulations pertaining to a facility’s maximum capacity and space for inmates.

. Petitioners sought the same injunctive relief against "the practice” of double celling in the initial article 78 challenge to the emergency rule, and Justice Harris enjoined DOCS "from implementing double occupancy housing units until such time as lawful and valid regulations permitting same are promulgated” (L.E.O.U. v State I, 168 Misc 2d, at 786, supra).

. None of the cases cited by respondents support allowing the Commission to violate its own rules or prohibit injunctive relief against the Commission. Powlowski v Wullich (102 AD2d 575 [4th Dept 1984]) involved detainees’ challenges to a local Sheriff’s failure to comply with Commission regulations, and the court ruled that enforcement of the Commission’s minimum standards is a matter for the Commission and declined to order the Sheriffs compliance with the regulations (supra, at 583). This proceeding involves the Commission’s own violation of their rules. Matter of Occidental Chem. Corp. v New York State Envtl. Facilities Corp. (113 AD2d 4 [3d Dept 1985], lv denied 67 NY2d 604) held that an agency was not required to prescribe objective standards or guidelines interpreting the statutory term "public interest”, where the legislative purpose stated in the statute was "quite specific” (supra, at 6). Here, by contrast, there is no comparable specific statutory purpose with which the Commission could conform in effecting a double celling policy.