[655 NYS2d 770]

In the Matter of LAW ENFORCEMENT OFFICERS UNION, DISTRICT COUNCIL 82, AFSCME, AFL-CIO, et al., Respondents, v STATE OF NEW YORK et al., Appellants. (Proceeding No. 1.)

In the Matter of LAW ENFORCEMENT OFFICERS UNION, DISTRICT COUNCIL 82, AFSCME, AFL-CIO, et al., Respondents, v STATE OF NEW YORK et al., Appellants. (Proceeding No. 2.)

Third Department, March 20, 1997

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Martin A. Hotvet* of counsel), for appellants.

*Hite & Casey, P. C.,* Albany *(Kevin S. Casey* of counsel), for respondents.

**OPINION OF THE COURT**

SPAIN, J.

On May 2, 1995, respondent State Commission of Correction (hereinafter the Commission) filed a notice of emergency adoption and a notice of proposed rule making to amend 9 NYCRR part 7621 by renumbering or amending certain sections and adding a new section 7621.5 which authorized double occupancy housing units at State correctional facilities (*see*, State Administrative Procedure Act § 202 [1], [6]). The double occupancy housing units were designed to address the problem of prison overcrowding by housing two inmates in a cell formerly designated for single occupancy, better known as double celling. In early July 1995 petitioners—the union which represents State correction officers, its vice-president and its Correction Policy Chair—commenced proceeding No. 1 against the State of New York, the Governor, the Department of Correctional Services (hereinafter DOCS) and the Commission, challenging the May 2, 1995 emergency regulation (hereinafter the original regulation). Petitioners alleged, *inter alia*, that the implementation of the original regulation violated State Administrative Procedure Act § 202 (6) (d) (iv) because the Commission, in its application, had failed to specify any facts or circumstances demonstrating that the immediate adoption of the original regulation was necessary or that compliance with regular rule-making procedures would be contrary to the public interest, and because the notice of emergency adoption failed to specify the cause, consequences or expected duration of the alleged threat to the public health, safety and general welfare as is required by State Administrative Procedure Act. Petitioners also asserted that the implementation of the original regulation was arbitrary and capricious because, unlike the existing regulations pertaining to single and multiple housing units which require a minimum of 60 or 50 square feet of living space per inmate, respectively, it did not set a minimum square footage per inmate requirement and, therefore, the regulation as promulgated could not be implemented consistent with the existing regulations (*see*, 9 NYCRR 7621.4, 7621.6, former 7621.5). Respondents opposed the petition and raised several objections in point of law including allegations that petitioners' claims were moot and that, to the extent the petition sought to challenge the merits of double celling, the petition was nonjusticiable.

On July 21, 1995, the same date as the return date for proceeding No. 1, the Commission filed a notice of emergency

adoption and revised proposed rule (hereinafter the revised regulation) which amended the provisions in the original regulation. Unlike the original regulation, the revised regulation cited specific reasons underlying the need for the emergency adoption of the double-celling regulation. It also specifically precluded certain categories of inmates from being assigned to double occupancy housing units (i.e., inmates with mental or emotional problems, severe physical disabilities, documented histories of vulnerability or aggressive behavior, or those with communicable diseases), and limited the length of time an inmate would be required to stay in a double occupancy housing unit to 60 days, unless the inmate volunteered to remain for a longer period (*see*, 9 NYCRR 7621.5 [e] [1], [2], [3]; [g]). The revised regulation superseded the original regulation and became final on October 4, 1995.

In November 1995, Supreme Court (Harris, J.) vacated and annulled the original regulation (168 Misc 2d 781) on the grounds that it failed to conform with State Administrative Procedure Act § 202 (6) and that it was arbitrary and capricious in that the Commission established double occupancy housing units (i.e., a single cell housing more than one inmate), but made no reference to minimum square footage, which was inconsistent with the existing regulation for multiple occupancy housing units (i.e., a housing area for more than one inmate) which required a minimum of 50 square feet of floor space per inmate. Specifically, the court found that because there was no rational basis for having a minimum square footage requirement for single and multiple occupancy housing units in State prisons, but not for double occupancy housing units, the distinction in treatment was arbitrary and capricious. Supreme Court vacated the original regulation and enjoined DOCS from implementing the double occupancy housing units until valid regulations were promulgated.

On January 29, 1996, petitioners commenced proceeding No. 2 against, among others, the State, DOCS and the Commission, challenging the October 4, 1995 final rule (hereinafter the final rule) on three grounds: (1) that the final rule was arbitrary and capricious, (2) that Supreme Court's decision in proceeding No. 1 serves as res judicata from further arguing the merits of double celling, and (3) that because the adoption of the original regulation was held to violate State Administrative Procedure Act, the rule-making process used in the adoption of the final rule also violated State Administrative Procedure Act and rendered the final rule null and void. Thereafter, Supreme

Court (Ceresia, Jr., J.) vacated and annulled the final rule (170 Misc 2d 143, 149), holding that it suffered from "the same infirmities as did the [original] emergency rule", i.e., it failed to delineate a minimum square footage per inmate housed in double occupancy housing units or address the omission of a minimum square footage requirement, and concluded that the regulation was irrational and arbitrary. The court also dismissed petitioners' third cause of action, holding that, even though the adoption of the original regulation was flawed and was subsequently invalidated, the separate process necessary for the complete adoption of the final rule was not affected. Supreme Court thereafter enjoined DOCS or the Commission from implementing double occupancy housing units. Respondents have appealed both judgments.

██ Initially, we agree with respondents that the implementation of the final rule on October 4, 1995, which superseded the original regulation of May 2, 1995, rendered the controversy over the validity of the original regulation moot, i.e., as of October 4, 1995 the rights of petitioners were no longer affected by the original regulation (*see generally, Matter of New York State School Bds. Assn. v New York State Bd. of Regents*, 210 AD2d 654; *Matter of Schulz v Lake George Park Commn.*, 180 AD2d 852; *Daniel v Coughlin*, 119 AD2d 922; *Dune Assocs. v Town Bd.*, 91 AD2d 968). Further, we reject petitioners' assertion that, because it falls within the exception to the mootness doctrine, their original regulation claim is still justiciable (*see, Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715). In our view, proceeding No. 1 raises no issues which should be preserved under the exception to the mootness doctrine (*see, Matter of Schulz v State of New York*, 182 AD2d 3, *lv denied* 80 NY2d 761; *Matter of Schulz v Lake George Park Commn.*, *supra*, at 854).

██ Next, we conclude that Supreme Court properly vacated the final rule and acted within its discretion in enjoining respondents from double celling inmates. The record amply supports Supreme Court's conclusion that petitioners overcame their substantial burden and adequately demonstrated that the regulation is unreasonable and unsupported by the evidence (*see, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health*, 85 NY2d 326, 331-332). Pursuant to Correction Law § 45 (6), the Commission established minimum standards for the care and custody of inmates by promulgating regulations providing that inmates be afforded a minimum square footage of space in individual and

multiple occupancy housing units.* Individual occupancy housing units, which are designed to house only one inmate (9 NYCRR 7621.4 [e]), are required to contain at least 60 square feet of floor space unless less square footage is otherwise approved by the Commission (9 NYCRR 7621.4 [a]). Multiple occupancy housing units, those housing no more than 60 inmates, must provide a minimum of 50 square feet of floor space per inmate in the sleeping area (9 NYCRR 7621.6 [a], [b]). The final rule defines double occupancy housing units as "an individual occupancy housing unit equipped to accommodate two inmates" (9 NYCRR 7621.5 [a]). Like the multiple occupancy housing units, the double occupancy housing units are designed to accommodate more than one inmate in an enclosed space, yet the final rule sets no minimum square footage per inmate requirement (*see*, 9 NYCRR 7621.5); nor does the final rule exempt double occupancy housing units from the 50-square-foot requirement afforded each inmate in a multiple occupancy housing unit.

In our view the final rule relating to double occupancy housing units, as written, is internally inconsistent with the existing regulations for multiple housing units and, therefore, unreasonable. Moreover, we agree with Supreme Court that there being "no rational basis for establishing a minimum square footage requirement for single and multiple occupancy housing units while having no such requirement for double occupancy housing units, said distinction in treatment is arbitrary and capricious" (168 Misc 2d, *supra,* at 786). It is significant that the final rule sets no minimum requirement for inmates housed in double occupancy housing units and does not exempt the double occupancy housing units from the minimum requirements for either individual or multiple housing units. "An administrative agency acts arbitrarily and capriciously when it fails to conform to its own rules and regulations" (*Matter of Era Steel Constr. Corp. v Egan,* 145 AD2d 795, 799).

We reject respondents' contention that a rational basis exists for not establishing a minimum square footage requirement by the restrictions placed on the types of inmates who may be housed in double occupancy units and the length of time that each inmate can be confined to such unit (*see*, 9 NYCRR 7621.5 [e], [g]). Notably absent from the final rule are any objective guidelines as to how the Commission is to determine whether a

---

* Notably, there is no constitutionally mandated minimum square footage for living space afforded to inmates in correctional facilities (*see, Rhodes v Chapman,* 452 US 337; *Bell v Wolfish,* 441 US 520).

particular inmate is "suitable" (9 NYCRR 7621.5 [e] [1]) or what factors the Commission will consider in determining whether an individual occupancy housing unit may be converted by DOCS to a double occupancy housing unit (see, 9 NYCRR 7621.5 [g]). Thus, no "minimum standards" for the care or custody of inmates have been established in the final rule (Correction Law § 45 [6]). Therefore, absent any objective standards for implementing the program, the regulation as written is arbitrary and capricious (see, Matter of Levine v Whalen, 39 NY2d 510, 519).

We view as flawed the dissenting position that although the two rules are in irreconcilable conflict, the final rule has implicitly repealed 9 NYCRR 7621.6. If an agency's regulation or rule could be repealed by implication, such result would violate due process principles. An agency's administrative rule-making authority, which is derived from the delegation of legislative power, must be exercised within the parameters of the agency's enabling statutes and in accordance with State Administrative Procedure Act. To allow the repeal of an agency rule or regulation by implication would subvert the notice requirements of State Administrative Procedure Act § 202.

Notably, respondents never argued that the agency's double-celling regulation was irreconcilably inconsistent with the multiple housing regulations or that the double-celling regulation repealed the multiple housing regulation by implication. On the contrary, respondents repeatedly maintained that these regulations were consistent. In reviewing the actions of an administrative agency, a reviewing court must uphold the agency's action, "if at all, on the basis articulated by the agency itself" (Motor Vehicle Mfrs. Assn. v State Farm Mut., 463 US 29, 50). " '[I]f those grounds are insufficient or improper, the court is powerless to sanction the determination by substituting what it deems a more appropriate or proper basis' " (Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, 441, appeal dismissed 470 US 1075, quoting Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 593).

Accordingly, the judgment in proceeding No. 2 should be affirmed.

CARPINELLO, J. (concurring in part and dissenting in part). Because the effect of the majority's decision is not merely the invalidation of a regulation, but the de facto permanent prohibition of double celling in existing State prisons, I am

constrained to dissent. I do not believe that petitioners, who seek to nullify 9 NYCRR 7621.5 (hereinafter the final rule), have met their heavy burden of showing that same is "unreasonable and unsupported by *any* evidence" (*Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health*, 85 NY2d 326, 332 [emphasis supplied]).

The record reveals that respondent State of New York is in the midst of a prison crisis. Respondent Department of Correctional Services (hereinafter DOCS) was operating at nearly 132% of its capacity as of July 1995. This Court cannot ignore court orders requiring DOCS to accept State-ready inmates from county jails within prescribed time periods or face multimillion dollar fines for contempt (*see*, CPL 430.20 [1]; *see also, Matter of Ayers v Coughlin*, 72 NY2d 346; *Matter of Jackson v New York State Dept. of Correctional Servs.*, 173 AD2d 467). This Court also cannot ignore its own decision validating Laws of 1995 (ch 3, § 29), which permitted respondent Governor to bar certain violent felony offenders from entering DOCS temporary release and residential treatment programs (*see, Dorst v Pataki*, 228 AD2d 4). Compelled to both accept an ever-increasing number of new prison inmates and to prevent the early release of existing inmates, respondent State Commission of Correction (hereinafter the Commission) has been left without any other short-term solution to this crisis other than the adoption of the final rule permitting *temporary* double celling.

In this environment, we should be mindful that the Court of Appeals has summarized the standards to be applied in determining the validity of a challenged regulation: "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation '*is so lacking in reason for its promulgation that it is essentially arbitrary*' * * *. The interpretation given a statute by the administering agency 'if not irrational or unreasonable, should be upheld' " (*Ostrer v Schenck*, 41 NY2d 782, 786 [emphasis supplied]). Indeed, "[a]dministrative rules are not judicially reviewed pro forma in a vacuum, but are scrutinized for genuine reasonableness and rationality in the specific context" (*New York State Assn. of Counties v Axelrod*, 78 NY2d 158, 166). Notably, an administrative agency's exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise (*see, Matter of Memorial Hosp. v Axelrod*, 68 NY2d 958, 960).

In my opinion, the final rule as adopted by the Commission—a body with special competence in this area—has not

been proven by petitioners to be arbitrary or unreasonable. The majority's finding of unreasonableness is based on the admitted inconsistency between the final rule and 9 NYCRR 7621.6 (multiple occupancy housing units). While there can be no doubt that these two provisions are inconsistent because the final rule violates the 50-square-foot requirement for multiple occupancy housing units (and, notwithstanding the Attorney-General's protestations to the contrary, two inmates in a cell is an obvious multiple occupancy), I find that the current crisis and the lack of other viable options provide a rational basis for adopting inconsistent regulations.

Only two recently constructed State prisons have been specifically designed for double celling. The vast majority of cells in the State are 60 square feet or less. It is therefore *impossible* for the Commission to promulgate regulations for double celling which would be consistent with 9 NYCRR 7621.6. Respondent Commissioner of Correctional Services believes it is preferable to spread very limited double celling* among *all* DOCS facilities rather than to concentrate it exclusively in two, thereby minimizing potentially adverse incidents. This exercise of judgment and expertise must be accorded high judicial deference (*see, Matter of Memorial Hosp. v Axelrod, supra*). Said differently, I am persuaded that the means chosen by the Commissioner to accomplish the unavoidable need for additional beds in State prisons have not been proven by petitioners to be "so lacking in reason" as to be arbitrary.

The rationality of the final rule is further buttressed by the safeguards provided within the rule itself. Although the square footage of a double occupancy housing unit is modest—60 square feet—it is comparable to other double occupancy housing units throughout the country, including Federal prisons. Additionally, inmates must undergo a screening and risk assessment prior to being assigned to a double occupancy housing unit (*see,* 9 NYCRR 7621.5 [e]). Most importantly, and unlike the original emergency regulation at issue in proceeding No. 1 (168 Misc 2d 781), the final rule imposes a 60-day limitation on an inmate's involuntary confinement in a double cell (*see,* 9 NYCRR 7621.5 [g]). It is this latter restriction, preventing indefinite double celling, which is most compelling in shielding the final rule from being invalidated on arbitrary and capricious grounds.

---

\* The final rule only impacts a small percentage of the 20,000 cell units within DOCS. DOCS has only been authorized to convert 866 cells for double occupancy use and, as of February 1996, the average number of cells actually used for this purpose was 610.

Finally, although the reconcilability of two inconsistent regulations is at issue in this proceeding, the general rule of statutory interpretation is that a subsequent statute prevails over a preexisting and irreconcilably conflicting statute which is not expressly repealed (*see,* McKinney's Cons Laws of NY, Book 1, Statutes §§ 391, 398). Likening these principles to the instant regulations, to the extent that the final rule and 9 NYCRR 7621.6 cannot be reconciled because of the square-footage inconsistencies, I find the final rule to be an implicit repeal of 9 NYCRR 7621.6 as the latter applies to double celling.

Scrutinizing the final rule not in a vacuum but in the specific context of the prison crisis, I find it to be reasonable and would reverse the order of Supreme Court (Ceresia, Jr., J.) (170 Misc 2d 143) invalidating it.

I concur in the majority's conclusion that the appeal in proceeding No. 1 should be dismissed as moot.

CARDONA, P. J., MERCURE and CASEY, JJ., concur with SPAIN J.; CARPINELLO, J., concurs in part and dissents in part in a separate opinion.

Ordered that the appeal in proceeding No. 1 is dismissed, as moot, without costs.

Ordered that the judgment in proceeding No. 2 is affirmed, without costs.