OPINION OF THE COURT
Joseph C. Teresi, J.
Petitioners bring this CPLR article 78 proceeding seeking an order setting aside a rule adopted by the State Commission of Correction which allows double bunking of prison inmates. Petitioners also seek to void the permanent rules facilitating the implementation of double celling adopted by the Department of Correctional Services (DOCS) and the State Commission of Correction, and to enjoin respondents from implementing the practice of double celling in State correctional facilities.
Respondents move for judgment pursuant to CPLR 3211 (a) (3) and (7) for an order and judgment dismissing the action for lack of standing and for failure to state a cause of action.
Initially, the court will address the issue of standing and grant the petitioners standing. To establish standing a petitioner must show some harmful effect and that the interest sought to be protected is within the zone of interest sought to be protected by the statute. (Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 9-11.)
Here, the Law Enforcement Officers Union, District Council 82 (Council 82), represents the officers that have encountered greater risk of injury and expend greater time enforcing discipline by having to control the actions of two inmates in one cell, instead of just one, as a result of the practice of double celling.
*298 The zone of interest of the regulation is the protection of the public by making more beds available for convicted felons and limiting the number that are inappropriately released before serving their sentence as a result of prison overcrowding. Correction officers are also seeking to protect society from criminals and argue that double celling makes inmates more violent and more susceptible to the spread of contagious disease to other inmates, correction officers and the community at large.
Council 82 has associational standing as described in Matter of Dental Socy. v Carey (61 NY2d 330). Petitioner’s members have standing as individuals with its membership working as correction officers charged with implementing the policies of double celling and dealing with the added disruption. Petitioners’ claims are germane to Council 82’s purpose which is to bargain for improved terms and conditions of employment for its membership. The relief sought would, in general, benefit all Council 82 members working in the facilities that double cell. Finally, Council 82, as the sole representative of New York State correction officers who are charged with dealing with inmates who are double celled, is an appropriate representative in the context of this proceeding.
This court will declare an administrative rule null and void only if it is found to be arbitrary and capricious. (New York State Assn. of Counties v Axelrod, 78 NY2d 158.) A petitioner must establish that no rational basis exists for the rule promulgation. (Supra, at 166.) “An administrative agency’s exercise of its rule-making powers is accorded a high degree of judicial deference, especially when the agency acts in the area of its particular expertise”. (Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326, 331.)
Here, respondents have demonstrated, in accord with Justice Carpinello’s separate opinion in Matter of Law Enforcement Officers Union v State of New York (229 AD2d 286), that the Department of Correctional Services is in the midst of a prison crisis. State correctional facilities are filled beyond capacity with no end in sight: New York State is under court order to accept State-ready inmates from county jails or face contempt charges; recently enacted laws prohibit the early release of violent felons.
Respondent’s choice of housing inmates in existing facilities rather than break the law, jeopardize the safety of the general public and expend large amounts of resources to *299 increase the number of cells already under construction, is both reasonable and supported by evidence. (Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d, supra, at 332.)
The State Commission of Correction’s decision, based on public comment during rule making, to have limited double celling at each facility, rather than concentrate all double celling in two newly constructed facilities, is a security measure that is rationally based. The Commission’s contention that the inmate population is more easily controlled by spreading the use of double cells to all facilities cannot be said to be “unreasonable and unsupported by any evidence”. (Supra, at 332.) The use of the older and smaller correctional facilities to house some double-celled inmates necessitates the need for a minimum square footage per inmate of 23 feet. (See, Rhodes v Chapman, 452 US 337; Bell v Wolfish, 441 US 520 [holding there is no constitutionally mandated minimum square footage for living space afforded inmates].)
Additionally, the State’s requirement that inmates placed in the reduced square footage double occupancy cells will only remain in these cells for 60 days and undergo health and compatibility screening is further evidence of rational decision making.
In deciding to double cell inmates, New York is following the lead of the Federal Government and six States which house the largest inmate populations. In each case, the majority of double celling occurring in the respective State or Federal system is in single cells converted to double occupancy.
Addressing petitioners’ claim that rules 9 NYCRR 7621.6 (f) and 7 NYCRR 1701.5 (c) (6) (i), concerning screening of inmates prior to double celling, is irrational because of its alleged inconsistency with 9 NYCRR 7621.6 (h) and 7 NYCRR 1701.5 (c) (6) (ii), the physical exam of inmates within 48 hours of being double celled, this court finds the regulations not to be mutually exclusive of one another and to be rationally based. The screening requires a review of the inmate’s medical history including the results of a medical examination upon reception into DOCS and results of periodic testing during confinement. The State’s contention that almost all inappropriate inmates will be screened out by review of medical records before the physical exam required by 9 NYCRR 7621.6 (h) represents a *300 rational approach that is consistent with other regulations facilitating double celling.
Respondents’ motion to dismiss is granted.
Petitioners’ motions are denied.