In the Matter of HIGHLAND NURSING HOME, INC., et al., Appellants, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. (Proceeding No. 1.)

In the Matter of NATHAN MILLER CENTER FOR NURSING CARE, INC., et al., Appellants, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. (Proceeding No. 2.)

Third Department, November 1, 1990

## APPEARANCES OF COUNSEL

*Fink Weinberger, P. C. (Stephen E. Powers, Stanley H. Lowell* and *Paul R. McMenamin* of counsel), for appellants in proceeding No. 1.

*Kronish, Lieb, Weiner & Hellman (Jerome T. Levy* of counsel), for appellants in proceeding No. 2.

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Nancy A. Spiegel* of counsel), for respondents.

## OPINION OF THE COURT

WEISS, J.

In 1986 the State's Medicaid program converted to a new methodology to compute nursing home reimbursement rates based in part upon the severity of the patient's medical condition and the degree of care required by the patient's condition, and in part on cost corridors consisting of acceptable ranges of costs based upon State and regional averages. The methodology conversion was to be financially neutral on the State budget and was designed to encourage nursing homes to accept more difficult case mixes and to encourage efficient delivery of medical services.

Respondents' use of regional labor cost adjustments recognized that such costs should be fairly homogeneous by providing extra funding to facilities whose labor costs were below the regional average and limiting funding to those above the average. Accordingly, over a period of time facilities would tend to adjust their actual labor costs toward the region-wide averages. However, the immediate effect of the conversion was predicted to result in financial windfalls to certain facilities and hardships to others with respect to labor cost adjustments. To avoid extreme differences, particularly hardships during the changeover to new methodology, the State provided for a transitionary phase-in of the regional wage equalization

factor when the use of the regional wage factor resulted in a $3.50 per-patient per-day difference from usage of similar, but facility-specific figures.

Petitioners, which are facilities that would have had rate gains in excess of $3.50 as a result of using the regional wage factor, complain that the $3.50 cutoff point and the transition formula are arbitrary, capricious and without a rational basis. We disagree. The gist of petitioners' contention is that they must use the transition formula, which in certain instances reduced their rate gain to substantially less than $3.50, while other less efficient facilities could have gains of up to $3.50 and retain the entire gain without reference to the transition formula. The scope of judicial review is limited to determining the reasonableness of the rate-setting action. This court may not annul such action except upon a compelling showing of unreasonableness *(Matter of Society of N. Y. Hosp. v Axelrod,* 70 NY2d 467). Moreover, in the area of economic and social welfare, classifications need not be perfect. If the classification has a reasonable basis, it will not be annulled because it results in unequal treatment *(see, Matter of Jones v Blum,* 101 AD2d 330, *affd* 64 NY2d 918; *see also, Dandridge v Williams,* 397 US 471, 485).

Here, the rate regulation at issue (10 NYCRR 86-2.10 [e]) seeks to phase in regional wage factors for facilities which would otherwise experience either very substantial immediate gains or losses under the new wage methodology. Thus, the classification has a rational basis, optimizing the use of available funds by limiting extremes in the rates during the transition by the use of facility-specific rate factors rather than regional factors. Petitioners have not demonstrated that the methodology and resulting Medicaid reimbursement rates based on their own labor cost factors did not satisfy the statutory standard of being reasonable and adequate to meet the costs incurred by an efficiently and economically operated facility *(see,* Public Health Law § 2807 [2] [e]; *see also, Matter of Sunrise Manor Nursing Home v Axelrod,* 135 AD2d 293, 297). Accordingly, the rate-making policy issues presented, being quasi-legislative in nature, are not confined to factual data alone, but involve broader judgmental considerations based upon the expertise and experience of the administrative agencies *(see, Matter of Catholic Med. Center v Department of Health,* 48 NY2d 967). Since petitioners have failed to make the required showing of unreasonableness, the judgments must be affirmed.

KANE, J. P., MIKOLL, YESAWICH, JR., and MERCURE, JJ., concur.

Judgments affirmed, without costs.