[605 NYS2d 493]

In the Matter of CONSOLATION NURSING HOME, INC., Respondent-Appellant, and NEW YORK CONGREGATIONAL HOME FOR THE AGED, Respondent, v COMMISSIONER OF NEW YORK STATE DEPARTMENT OF HEALTH et al., Appellants-Respondents.

Third Department, December 16, 1993

150

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General,* Albany *(Victor Paladino* and *Peter G. Crary* of counsel), for appellants-respondents.

*Cadwalader, Wickersham & Taft,* New York City *(Peter G. Bergmann* and *William J. Natbony* of counsel), for respondent-appellant.

## OPINION OF THE COURT

CARDONA, J.

Petitioners are operators of nursing homes participating in the Medicaid reimbursement program and serving Medicaid patients almost exclusively. By this CPLR article 78 proceeding, petitioner Consolation Nursing Home, Inc. (hereinafter Consolation) seeks, *inter alia,* annulment of its 1988 through 1991 Medicaid reimbursement rates and petitioner New York Congregational Home for the Aged (hereinafter Congregational Home) seeks, *inter alia,* annulment of its 1990 and 1991 rates. Consolation challenges three aspects of its rates: (1) the promulgation and application of a regulation, 10 NYCRR 86-2.10 (c) and (d), that provided an across-the-board reduction in the base prices for the direct and indirect components of Medicaid reimbursement (hereinafter the base reduction regulation), (2) the promulgation and application of a regulation that reduced the direct component of Medicaid reimbursement rates by an across-the-board factor of 3.035% (hereinafter the recalibration regulation),[1] and (3) the offset of Consolation's 1990 and 1991 property interest expense with Consolation's 1983 investment income. Congregational Home, however, challenges only the promulgation and application of the recalibration regulation.

Supreme Court dismissed Consolation's recalibration claims, interest income offset claims and challenge to the emergency adoption of the base reduction regulation for the 1988 and 1989 rate years as barred by the applicable Statute of Limitations (CPLR 217). Supreme Court also annulled respondents' computations of petitioners' Medicaid reimbursement rates for the 1990 through 1992 rate years. It directed respondents to recompute petitioners' Medicaid reimbursement rates for those years without reference to (1) the recalibration regulation (for rate years 1990 and 1991), (2) the income offset methodology, which the court found to be irrational, and (3) the base reduction regulation, which the court simply annulled. Respondents and Consolation have appealed.

■ Supreme Court correctly determined that the applicable Statute of Limitations bars petitioners' claims for the 1988

---

1. An earlier recalibration regulation (10 NYCRR former 86-2.31) was struck down by the Court of Appeals in *New York State Assn. of Counties v Axelrod* (78 NY2d 158) as lacking a rational basis. The present regulation (10 NYCRR 86-2.31 [a]) became effective December 17, 1991 and utilizes the same 3.035% cap for the 1989 through 1991 rate years.

and 1989[2] rate years. A determination of the Department of Health affecting a facility's Medicaid reimbursement rates is generally deemed "final and binding" for CPLR article 78 purposes upon receipt of the rate recomputation notice apprising the facility of its actual reimbursement rate *(see, New York State Assn. of Counties v Axelrod,* 78 NY2d 158, 165-166, *supra),* or upon the receipt of a determination following an administrative appeal. The instant proceeding was not commenced until September 1991, well beyond the applicable four-month period following the denial of Consolation's rate appeal in June 1990. Furthermore, Consolation's waiver argument lacks merit. The "waiver" relied on by Consolation was made in the context of another proceeding brought to challenge the base reduction regulation. Because Consolation did not bring the instant proceeding within four months of the determination denying its rate appeal, it does not fall within the waiver terms expressed in the other proceeding.

■ Before we address the merits of Consolation's arguments challenging the validity of respondents' legislative action in promulgating the base reduction regulation *(see, Matter of Hall v Coughlin,* 188 AD2d 792), we note that a CPLR article 78 proceeding is not the proper vehicle for challenging this legislative type of action; Consolation's remedy is by way of a declaratory judgment action *(see, Matter of Lund v Town Bd.,* 162 AD2d 798). Therefore, we deem it appropriate to treat this portion of Consolation's petition as an action for declaratory judgment *(see, supra,* at 800; *see also,* CPLR 103 [c]).

Respondents calculate petitioners' Medicaid rates using a methodology first implemented in 1986 and known as the Resource Utilization Group-II method (hereinafter RUG-II; *see,* 10 NYCRR 86-2.10). Under the RUG-II system, respondents reimburse petitioners by payment of a per-patient per-day rate based upon four cost components: direct, indirect, capital and noncomparable. Respondents calculate the direct component by comparing the facility's direct costs reported for the base year 1983, trended forward to account for inflation, with each facility's base, mean and ceiling prices, which are calculated by reference to State-wide average costs. Similarly, the indirect component of petitioners' rates is calculated by determining average costs in each facility's peer group and then

---

**2.** Consolation makes no argument with respect to the dismissal of its 1989 claim and therefore has waived review of this issue *(see, e.g., First Natl. Bank v Mountain Foods Enters.,* 159 AD2d 900, 901).

calculating each facility's base, ceiling and mean prices. If a facility has actual costs that are above the ceiling price, that facility receives only the ceiling rate, while a facility with costs below the base price (a below-base facility) receives reimbursement at the base rate. Thus, a below-base facility should theoretically receive reimbursement at rate higher than its actual costs as an incentive for the facility to keep its costs low, while a facility with costs above the ceiling is penalized by receiving reimbursement at a rate lower than its actual costs.

An administrative regulation such as the base reduction regulation will be upheld only if it has a rational basis and is not unreasonable, arbitrary or capricious (see, New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166, supra). Petitioners bear the burden of making a compelling showing that the calculations from which respondents' rate-setting action is derived are unreasonable (see, supra, at 166; Matter of Society of N. Y. Hosp. v Axelrod, 70 NY2d 467, 473; Matter of Highland Nursing Home v Axelrod, 164 AD2d 83, 85). Respondents promulgated the base reduction regulation as a cost-saving measure, in conjunction with and as a means of funding the adoption of the nursing salary adjustment (10 NYCRR 86-2.10 [r]) to Medicaid reimbursement, made necessary by the increases in salaries paid to nurses in 1988. The inflation or "trend" factor used by respondents to project 1983 base year costs to rate year levels did not take these salary increases into account. Respondents determined that the most logical place to reduce costs was to reduce the "extra" or "bonus" reimbursements—the difference between their trended 1983 costs that below-base nursing homes received under the RUG-II system—by lowering the base price level at which facilities must operate to receive reimbursement at a rate higher than their actual costs. Consolation argues that this has the effect of increasing the operating losses of nursing facilities like it which were below base in 1983 but since 1989 are no longer below base due to changes at their facilities that have caused their direct and indirect costs to exceed the trended base prices.

■ Initially, Consolation contends that the base reduction regulation is irrational because respondents failed to conduct empirical studies to verify that below-base facilities were actually, rather than hypothetically, receiving reimbursement above their actual costs. We agree. The study—conducted three years before the base reduction was promulgated—and

the cost analysis that respondents rely on[3] to justify the base reduction regulation fail to document and substantiate respondents' conclusion that below-base facilities, which fall within respondents' definition of efficiently and economically operated facilities,[4] were actually receiving excess reimbursement. Because the base reduction regulation was promulgated without a "measured period of empirical documentation" *(New York State Assn. of Counties v Axelrod, supra,* at 168) and is not supported by evidence in the record, we find that it lacks a rational basis. In light of this determination, we need not address Consolation's other arguments for invalidating the base reduction regulation.

As conceded by respondents, this Court has recently held that (1) respondents cannot apply the new recalibration regulation to facilities' rates from 1989 through 1991 *(see, New York State Assn. of Counties v Axelrod,* 191 AD2d 932, *lv dismissed* 82 NY2d 705; *see also, Matter of New York Assn. of Homes & Servs. for Aging v Commissioner of N. Y. State Dept. of Health,* 195 AD2d 822), and (2) respondents' use of 1983 investment income to offset facilities' post-1983 interest expense (10 NYCRR 86-2.20 [c]) is irrational *(see, Matter of Brothers of Mercy Nursing & Rehabilitation Ctr. v Commissioner of N. Y. State Dept. of Health,* 192 AD2d 50; *see also, Matter of Eger Health Care Ctr. v McBarnette,* 195 AD2d 730). Accordingly, petitioners are entitled to have their Medicaid reimbursement rates for the 1990 and 1991 rate years recomputed without reference to the new recalibration regulation, and additionally, Consolation is entitled to have its Medicaid reimbursement rates for the 1990 and 1991 rate years recomputed utilizing investment income earned in 1988 and 1989, respectively, and without reference to the base reduction regulation.

WEISS, P. J., MERCURE, WHITE and MAHONEY, JJ., concur.

Ordered that the judgment is modified, on the law, without

---

3. The record contains a portion of the initial monitoring study performed in 1986 of the entire RUG-II system and an analysis of 1987 cost data.

4. Respondents define "efficiently and economically operated facilities" as those that operate at or below the State-wide median cost per day for direct and indirect costs. This definition includes below-base facilities, at least those with below-base costs in 1983, because such facilities operate below both base and median costs.

costs, by partially converting this proceeding to a declaratory judgment action; it is declared that the base reduction regulation is invalid as lacking a rational basis; and, as so modified, affirmed.