(September 30, 2008)

■ In the Matter of TERRACE HEALTHCARE CENTER, INC., Appellant, v ANTONIA C. NOVELLO, M.D., as Commissioner of Health for the State of New York, et al., Respondents. [865 NYS2d 37]—

Judgment, Supreme Court, Bronx County (Mark Friedlander, J.), entered November 30, 2006, dismissing the petition to set aside as untimely the results of all respondent Department of Health's (DOH) audits of petitioner's patient review instruments (PRIs), used to calculate petitioner's Medicaid reimbursement rate, performed within the six years preceding the petition, to direct DOH to use petitioner's PRI unaudited submissions from 1996 to the present to calculate its Medicaid reimbursement rate, to rescind the parties' March 3, 2003 agreement, and to enjoin the review scheduled for March 15, 2006 of petitioner's December 1999 PRIs, affirmed, without costs.

Petitioner's challenges to the reviews of its PRI submissions for December 1996, June 1997, December 1997, June 1998 and December 1998 are barred by the four-month statute of limitations for CPLR article 78 review (CPLR 217 [1]). Petitioner contends that it is entitled to a six-year limitation period because it is challenging the constitutionality of the review process under 10 NYCRR 86-2.30. However, the review of the submissions in question was not conducted pursuant to 10 NYCRR 86-2.30. It was conducted pursuant to the parties' March 3, 2003 "Agreement to Accelerate PRI Processing," which petitioner entered into voluntarily. DOH did not breach the agreement by failing to expedite the process. The agreement did not set forth a schedule to which DOH was required to adhere, and the record shows that, based on the agreement's procedures, DOH became more timely in the reviews and began to reduce the backlog.

Nor were DOH's reviews untimely because they were performed more than six years after the PRIs were submitted. Petitioner's reliance on *Matter of Blossom View Nursing Home v Novello* (4 NY3d 581, 595-596 [2005]) is misplaced. DOH did

not attribute the backlog to mere administrative inadvertence but explained that the delays were the result of having to proceed through all stages of review in 7 of the 10 reviews that preceded the review of the December 1996 submissions, because of petitioner's improper submissions.

DOH's determination was not arbitrary and capricious. DOH is not obligated to accept petitioner's submissions without review on the ground that they were prepared by an independent organization it approved. Moreover, it is uncontested that petitioner did not have proper documentation for at least one such submission. The assertion of the organization's president that the documents must have existed when the submissions were made is not based on personal knowledge, and DOH was not required to accept it in lieu of the documents. Nor was petitioner's counsel's assertion that there had been a fire "some years ago" a substitute for the proper documentation, which, upon execution of the March 2003 agreement, petitioner knew or should have known it was required to preserve. Petitioner has raised no material issues regarding the remaining PRI reviews. Concur—Saxe, J.P., Nardelli and Buckley, JJ.

Catterson, J., dissents in a memorandum as follows: I must respectfully dissent because in my view relief may not be had under CPLR article 78; thus, dismissal pursuant to the four-month statute of limitations is inappropriate and would deprive the plaintiff of all relief. Because the defendant's audits of the plaintiff healthcare facility were delayed almost *seven* years despite the defendant's agreement to "expedite" the review process, I would convert this action to one for a declaratory judgment and find the audits untimely as a matter of law.

The plaintiff, Terrace HealthCare Center (hereinafter referred to as Terrace) is a 240-bed nursing home that receives a majority of its income from Medicaid. In New York, the Department of Health (hereinafter referred to as DOH) administers the program, establishing reimbursement rates for nursing homes. The DOH calculates reimbursement based on a case mix index (CMI) which reflects the utilization of resources for each patient: the higher the CMI, the higher the reimbursement rate. Utilization is documented by patient review instruments (PRIs), which are prepared and submitted to the DOH every six months. The PRI details each patient's medical diagnosis, treatment, and care requirements during the four weeks preceding the submission of the form.

The DOH reviews the accuracy of PRIs approximately every 18 months. Reviews are structured in three stages. In stage I, the records of 40 patients are assessed by an independent audi-

tor and compared to the PRIs prepared by the facility. If there is a statistically significant discrepancy between the auditor's assessment and the facility's assessment, then a stage II review is performed. During a stage II review, 80 patient records are examined and the facility has an opportunity to dispute any stage I findings and may present additional documentation. The auditor has the option of overturning stage I findings. If there is a significant statistical discrepancy after a stage II review, a stage III review will be performed. In a stage III review, all of the patients at the facility are reviewed except for those that are already being reimbursed at the lowest rate, and the facility has the opportunity to challenge stage II determinations. If the facility "fails" (i.e. there is again a significant statistical discrepancy) the stage III review, the DOH will require the facility to contract with a DOH-approved independent third-party assessor to prepare its PRIs based on records supplied by the facility. The reimbursement rate that is calculated at the end of a stage III review is based on the DOH's CMI calculation and is considered final, and there is no formal or statutory procedure available to challenge this final reimbursement rate.

In the years prior to 1996 (the first year of PRIs at issue in this case), the DOH conducted several reviews of Terrace's PRIs and found statistical discrepancies that precipitated additional stages of review. Over time, the reviews became increasingly delayed. For the years 1996 through 2001, Terrace's PRIs were timely filed and prepared by independent assessors in compliance with the DOH.

In February 2003, when the delay in DOH reviews had risen to more than six years, the Assistant Director of the Division of Health Care Financing offered to remedy the situation with a modified audit process that consisted of one on-site review of all outstanding PRIs for one period. The purported "expedite agreement" was represented to Terrace as "accelerat[ing] the inclusion of a more current case mix index" and saving "months of time." As part of the expedite agreement, Terrace waived the opportunity to challenge stage I and stage II results and also the right to an exit conference.

In July 2003, five months after the expedite agreement was signed, the DOH reviewed Terrace's 1996 PRIs (six years, eight months after submission) and continued reviewing each period as follows: June 1997 submissions were reviewed in May 2004 (six years, eleven months after submission), December 1997 submissions were reviewed in October 2004 (six years, ten months after submission), June 1998 submissions were reviewed in February 2005 (six years, eight months after submission),

December 1998 submissions were reviewed in June 2005 (six years, six months after submission), June 1999 submissions were reviewed in November 2005 (six years, five months after submission), and December 1999 submission were reviewed in March 2006 (six years, four months after submission). This "expedited" schedule reflected a consistent pattern of a six-to-seven-year delay between the submission of the PRIs and DOH review. The DOH found that Terrace had "failed" all but the final review (June 1999 PRIs).

Pending review of the December 1999 PRIs which was scheduled for March 15, 2006, Terrace filed this article 78 proceeding on March 13, 2006 petitioning the court to rescind the March 3, 2003 expedite agreement, to set aside the results of the audits for the previous six years, and to direct DOH to use Terrace's PRIs to calculate reimbursement rates for that period.

The Supreme Court dismissed the action, finding the claims for all but the 1999 PRIs barred by the article 78 four-month statute of limitations, and dismissed claims related to the 1999 PRIs for failing to set forth a basis for the relief sought. In addressing the substantive issues for the 1999 PRIs, it concluded that the DOH reviews were not untimely, Terrace was not prejudiced by the delay, and that DOH had not materially breached the expedite agreement. Additionally, it found that Terrace was not denied a due process right to review.

In my opinion, the court erred. It could have and should have sua sponte converted the proceeding to one for declaratory judgment on the ground that the ongoing series of determinations by DOH was ill-suited for article 78 proceedings.

It is well established that where the appropriate relief cannot be granted in an article 78 proceeding, the court may consider the matter as one for a declaratory judgment. (*Matter of Concord Realty Co. v City of New York*, 30 NY2d 308, 314 [1972]; *Matter of Greene v Finley, Kumble, Wagner, Heine & Underberg*, 88 AD2d 547, 547-548 [1st Dept 1982]; CPLR 103 [c].) Here, there is no dispute that each notification following a DOH audit constituted a final administrative act which began the four-month statute of limitations running for an article 78 proceeding. If, however, as Supreme Court concluded, the only vehicle available to Terrace was an article 78 proceeding, the four-month statute of limitations would have necessitated the filing of seven consecutive article 78 petitions. Given the factual complexity of this case, it would be an absurd use of judicial resources to foreclose Terrace from bringing one action and insist instead on multiple petitions. (*See Perez v Paramount Communications*, 92

NY2d 749, 754 [1999] [stating that judicial economy and preventing a multiplicity of suits is an objective of the CPLR].)

Moreover, in this case, constraining Terrace to an article 78 proceeding bound by the four-month statute of limitations after the DOH delayed the audits for over six years eviscerates the purpose of the four-month statute of limitations. (*See Solnick v Whalen*, 49 NY2d 224, 232 [1980], citing *Mundy v Nassau County Civ. Serv. Commn.*, 44 NY2d 352, 359 [1978, Breitel, Ch. J., dissenting]). In *Solnick*, the Court emphasized the rationale underlying the implementation of a four-month statute of limitations for an article 78 proceeding. Quoting Judge Breitel's dissent in *Mundy*, the Court stated the crux of the four-month statute of limitations for an article 78 petition "is the strong policy, vital to the conduct of certain kinds of governmental affairs, that the operation of government not be trammeled by stale litigation and stale determinations." (*Solnick*, 49 NY2d at 232.) The DOH tarried almost seven years in performing the audits at issue and should not be permitted to invoke the statute of limitations as both a sword and shield.

In my view, therefore, it is appropriate for the six-year statute of limitations for a declaratory judgment to apply. (CPLR 213; *see Solnick*, 49 NY2d at 230 [noting that "(i)f no other form of proceeding exists for the resolution of the claims tendered in the declaratory judgment action the six-year limitation of CPLR 213 (subd 1) will then be applicable"].) In any event, under the next-nearest theory advanced in *Solnick*, the closest proceeding would have been against DOH for breach of contract (also a six-year statute of limitations) for failing to expedite the review process pursuant to the expedite agreement and merely maintaining the same six-to-seven-year delay between audits. (*Solnick* at 230 ["Inquire into the kind of action that would have been most likely to raise the same substantive issues had there been no declaratory action available, and determine what the statute of limitations would have been on such next-nearest action" (internal quotation marks and citations omitted)]; *SRN Corp. v Glass*, 244 AD2d 545, 546 [2d Dept 1997] [holding that since the claim was based in contract, the six-year statute of limitations rather than the four-month period should apply in an action brought by a nursing home seeking a declaration that a resident was eligible for medical assistance].)

The substantive issue in the declaratory judgment action thus becomes whether the PRI audits conducted by the DOH were timely. As a threshold matter, since it is undisputed that the DOH's on-site audits constituted a "final decision" concerning Terrace's PRIs, the question of their timeliness is ripe for our

review. (*Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 519 [1986], *cert denied* 479 US 985 [1986]; *see also Matter of Committee to Save Beacon Theater v City of New York*, 146 AD2d 397, 402-403 [1st Dept 1989].)

In my opinion, the DOH audits were also untimely as a matter of law. (*See Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 596 [2005].) In that case, the Court held that a six-to-seven-year delay in PRI audits was inexcusable when the DOH claimed "administrative oversight (meaning inadvertence, not supervision)." (*Id.* at 595-596.) In this case, the court distinguished *Blossom* by accepting the DOH's excuse that it was Terrace, rather than the DOH, that caused the delay by submitting "inadequate filings." I disagree. There simply is nothing in the record to indicate that Terrace caused the delay. The original PRIs were timely submitted and Terrace contracted with a DOH-approved third-party agency to prepare them. The DOH asserted that because Terrace's PRIs were inadequate, stage II and stage III PRI audits had to be performed. This distinction is unpersuasive because it nevertheless amounts to an administrative failing by the DOH to timely administer its own internally regulated processes. In *Blossom*, the Court found the six-to-seven-year delay in performing PRI audits "untimely as a matter of law." (*Id.* at 596.) Similarly, in this case, I would reject the DOH's pretext that Terrace was responsible by its conduct for the delay, and find the six-to-seven-year delay in audits inexcusable and untimely as a matter of law. This is particularly true since eliminating the stage reviews in the guise of "expediting" the process did nothing to hasten the glacial pace of the audits.

Moreover, I believe that an analysis of the other three factors of untimeliness enumerated in *Matter of Cortlandt Nursing Home v Axelrod* (66 NY2d 169, 178 [1985], *cert denied* 476 US 1115 [1986] [determining whether a period of delay is reasonable within the meaning of State Administrative Procedure Act § 301 (1)]), also requires a finding in favor of Terrace. In addition to the causal connection between the conduct of the parties and the delay, the Court also considered the nature of the private interest allegedly compromised by the delay, the actual prejudice to the private party, and the underlying public policy advanced by governmental regulation. (*Id.*) Prejudice results when the administrative delay has damaged a party's ability to mount a defense in an adversarial administrative proceeding. (*Id.* at 180-181.) The important public policy at issue in recalculating Medicaid reimbursement rates is the recovery of public funds. (*Id.* at 182.)

I believe that the court erred in finding that Terrace was not prejudiced by the delay. Here, the private interest compromised by the delayed audits was Terrace's right to present support for its PRIs. The DOH claims that Terrace was on notice to preserve documents as of the March 2003 agreement, and so cannot claim prejudice. In fact, however, the six-to-seven-year delay caused Terrace to be unable to present additional information during the on-site audits such as documentation regarding ADLs (activities of daily living) and rehabilitation, the oral testimony of the staff who treated the patients, and the opportunity to demonstrate a patient's condition and care through direct observation. But for the delay in audits, Terrace claims it would have been able to present valuable support for its submitted PRIs that was no longer available by the time the expedited audits were performed. For example, the record reflects that documents for one of the audit periods were inadvertently lost or destroyed by fire which led the DOH to reject certain PRIs and replace them with their own, resulting in a lower CMI index and reimbursement rate.

The fourth factor, public policy, is weighed against the first three. While there is a "strong, defined public policy of this State to recover public funds improperly received" (*Cortlandt Nursing Home*, 66 NY2d at 182), as the *Blossom* Court pointed out, long-delayed and protracted PRI audits "harm the public fisc by thwarting prompt recoupment of any Medicaid overpayments." (*Blossom*, 4 NY3d at 595.) Although great deference is normally accorded administrative agency delays when there are complex issues involved (*Cortlandt Nursing Home*, 66 NY2d at 181), as the *Blossom* Court aptly observed, " 'timely' is not synonymous with 'timeless.' " (*Blossom*, 4 NY3d at 595.)

Thus, for the foregoing reasons, I would convert this CPLR article 78 proceeding to a declaratory judgment action, find the audits performed in 2003, 2004, 2005, and 2006 untimely as a matter of law, and order the DOH to recompute the reimbursement rate based on Terrace's originally submitted PRIs for the periods 1996, 1997, 1998, and 1999.