*638 In a hybrid proceeding pursuant to CPLR article 78, inter alia, to review two determinations of the Commissioner of the New York State Department of Health, both dated March 30, 2010, enforcing audit results of the petitioners/plaintiffs’ patient review instrument submissions for certain years, and action for declaratory relief, the petitioners/plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Queens County (Kelly, J.), dated September 15, 2010, as, upon a decision of the same court dated August 9, 2010, denied the petition and dismissed the proceeding.
Ordered that the judgment is affirmed insofar as appealed from, with costs.
The petitioners/plaintiffs (hereinafter the petitioners) run nursing homes in Queens. In 1998, the petitioner New Surfside Nursing Home, LLC (hereinafter New Surfside), instituted a Neurobiological Program to provide care to mentally ill and brain-injured patients. The program accepted patients discharged from facilities licensed by the New York State Office of Mental Health (see generally Hirschfeld v Teller, 14 NY3d 344 [2010]). The Neurobiological Program later expanded to other nursing homes under related ownership, including the petitioner Meadow Park Rehabilitation and Health Care Center, LLC (hereinafter Meadow Park).
As part of the process of Medicaid reimbursement, the petitioners semiannually submitted patient review instrument (hereinafter PRI) data to the New York State Department of Health (hereinafter the DOH) (see 10 NYCRR 86-2.11 [b]). PRI submissions provide information assessing each patient’s medical diagnosis, treatment, and care (see 10 NYCRR 86-2.30; Matter of Terrace HealthCare Ctr., Inc. v Novello, 54 AD3d 643, 644 [2008]). Each patient is placed into 1 of 16 “resource utilization” groups, and assigned a case mix index (hereinafter CMI) number (see 10 NYCRR Appendix 13-A). The weighted average of all patients’ CMI values is a nursing home’s CMI, upon which a portion of the facility’s Medicaid reimbursement is based (see 10 NYCRR 86-2.10 [a] [5]; [c] [6]). The petitioners classified the patients in the Neurobiological Program in the highest category of “Restorative Therapy/Heavy Rehabilitation.”
In February 2003, the DOH completed an audit of New Surfside’s July 2000 PRI submission, and in July 2004 it completed an audit of Meadow Parks’s May 2000 PRI submission (see 10 NYCRR 86-2.30 [e]). Subsequent audits were completed for PRI submissions for subsequent years. In the audit results, the DOH controverted the petitioners’ “Restor *639 ative Therapy/Heavy Rehabilitation” designation of the patients in the Neurobiological Program, thereby reducing the Medicaid reimbursements to which the petitioners were entitled. The petitioners nevertheless continued to classify the patients in the Neurobiological Program in the highest category of “Restorative Therapy/Heavy Rehabilitation.” In letters dated March 30, 2010, the DOH sent the petitioners revised Medicaid rate sheets implementing the changes to the petitioners’ PRI submissions made in the audits. The DOH alleged that the petitioners made substantial profits of $14.2 million (New Surfside) and $6.2 million (Meadow Park) during the years in question.
The petitioners commenced this hybrid proceeding pursuant to CPLR article 78 to review the DOH’s determinations controverting their PRI submission designations for patients in the Neurobiological Program and enforcing the results of the audits, and action for declaratory relief. They sought a judgment, inter alia, annulling the audit results, enjoining the respondents from implementing and enforcing the revised Medicaid rate sheets, and directing the respondents to issue new revised Medicaid rate sheets based upon the original Restorative Therapy/Heavy Rehabilitation designations. The Supreme Court, inter alia, denied the petition and dismissed the proceeding. The petitioners appeal, and we affirm the judgment insofar as appealed from.
In this proceeding in which the petitioners challenge an agency determination that was not made after a quasi-judicial hearing, we must consider whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion (see CPLR 7803 [3]; Matter of Halperin v City of New Rochelle, 24 AD3d 768, 770 [2005]). In such a proceeding, courts “examine whether the action taken by the agency has a rational basis” and will overturn that action only “where it is ‘taken without sound basis in reason’ or ‘regard to the facts’ ” (Matter of Wooley v New York State Dept, of Correctional Servs., 15 NY3d 275, 280 [2010], quoting Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 232 [1974]), or where it is “arbitrary and capricious” (Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d 1037, 1038 [2010]). Further, courts must defer to an administrative agency’s rational interpretation of its own regulations in its area of expertise (see Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]; Matter of Nazareth Home of *640 the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006]; Matter of Manko v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin., 88 AD3d 719 [2011]; Matter of Jennings v Commissioner, N.Y.S. Dept, of Social Servs., 71 AD3d 98, 109 [2010]).
Here, the DOH’s enforcement of the audit results through issuance of the revised Medicaid rate sheets was not arbitrary and capricious. By regulation, the DOH is required to correct a facility’s CMI in accordance with audit results, and to adjust payments to reflect changes in the facility’s CMI (see 10 NYCRR 86-2.30 [e] [5]; 86-2.11 [a]). The DOH cannot be estopped from exercising these duties by any delay in issuing the revised Medicaid rate sheets (see Matter of Frye v Commissioner of Fin. of City of N.Y., 62 NY2d 841, 844 [1984]).
The petitioners’ challenges to the audit results themselves are untimely, as they were not brought within four months after the petitioners’ receipt of the audit results (see CPLR 217 [1]; Matter of Terrace HealthCare Ctr., Inc. v Novello, 54 AD3d 643 [2008]; Concourse Rehabilitation & Nursing Ctr., Inc. v Novello, 45 AD3d 366, 367 [2007]). The cases relied upon by the petitioners, cited by our dissenting colleague for the proposition that the audit results were not final and binding until revised Medicaid rate sheets were issued in 2010, do not involve audit results and do not compel a different result (N.Y. State Dept, of Health, 205 AD2d 991 [1994]; Matter of New York State Health Facilities Assn, v Axelrod, 199 AD2d 752, 753 [1993], revd sub nom. Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept, of Health, 85 NY2d 326 [1995]). Furthermore, contrary to our dissenting colleague’s position, the petitioners “fully understood the implication of DOH’s determination” upon receipt of those results (Matter of Alterra Healthcare Corp. v Novello, 306 AD2d 787, 788 [2003]). Indeed, New Surfside commenced an article 78 proceeding within four months of receiving its audit results in 2003, but it failed to pursue the matter, which was eventually marked off the calendar.
In any event, the DOH’s determination to apply existing regulations in conducting the audits was not arbitrary and capricious. “The rules of an administrative agency, duly promulgated, are binding upon the agency as well as upon any other person who might be affected” (Matter of Frick v Bahou, 56 NY2d 777, 778 [1982]; see Matter of Henn v Perales, 186 AD2d 740 [1992]). A facility is not entitled to Medicaid reimbursements sought in violation of applicable regulations, even where the services were *641 properly rendered (see Matter of Cornerstone of Med. Arts Ctr. Hosp. v Novello, 304 AD2d 445 [2003]; Matter of A.R.E.B.A. Casriel v Novello, 298 AD2d 134 [2002]). The assertions made by the managing member and a former administrator of New Surfside that, sometime in 1998, a DOH official and an independent contractor represented that the petitioners would be permitted enhanced reimbursement not provided for in existing regulations, even if credited, do not establish an enforceable agreement between the DOH and the petitioners. Furthermore, to the extent that the petitioners allege that they relied upon any such representations, estoppel cannot be invoked to prevent the DOH from discharging its statutory duties (see Matter of Schorr v New York City Dept. of Hous. Preserv. & Dev., 10 NY3d 776, 779 [2008]; Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 130 [1990]; Matter of Miney v Donovan, 68 AD3d 876, 878 [2009]).
The petitioners’ remaining contentions are either without merit or not properly before this Court. Dickerson, J.P., Chambers and Miller, JJ., concur.
Austin, J., dissents, and votes to reverse the judgment insofar as appealed from, on the law, reinstate the petition, and grant the petition to the extent of annulling the determinations of the Commissioner of the New York State Department of Health dated March 30, 2010, annulling the audit results enforced by those determinations, and directing the respondents to reimburse the petitioners in accordance with the last audited Medicaid reimbursement rate sheets submitted by the petitioners in 2000, and otherwise deny the petition, in accordance with the following memorandum: On March 30, 2010, the New York State Department of Health (hereinafter the DOH) issued some eight years of previously withheld revised Medicaid reimbursement rate sheets to the petitioners all in one fell swoop. These revised rate sheets were predicated upon several audits which were left to languish unenforced for years, despite regulatory obligations mandating periodic adjustment by the DOH. During this lengthy interregnum, the DOH actively injected ambiguity and uncertainty into whether the subject audits were intended to be final and binding determinations, and did not treat them as such until the issuance of the revised rate sheets. It was only at that point that the petitioners, New Surfside Nursing Home, LLC (hereinafter New Surfside), and Meadow Park Rehabilitation and Health Care Center, LLC (hereinafter Meadow Park), were notified that they were required to repay excess reimbursement sums of $14,516,679.15 and $12,683,074.91, respectively.
To affirm the Supreme Court’s determination that the *642 petitioners’ challenges to the DOH’s audit results were time-barred would be to allow the DOH to inequitably penalize the petitioners for the ambiguity it created.
While invocation of the doctrine of estoppel against a governmental agency is generally foreclosed in order to avoid fraud, it is not absolutely precluded and is available in exceedingly rare circumstances (see Matter of New York State Med. Transporters Assn. v Perales, 77 NY2d 126, 130 [1990]; Matter of Parkview Assoc, v City of New York, 71 NY2d 274, 282 [1988], cert denied 488 US 801 [1988]). I believe that this case is one of those rare circumstances.
For this reason and the additional reasons herein set forth, I respectfully dissent, and vote to reverse the Supreme Court’s judgment and grant the petition to the extent of annulling the challenged determinations of the DOH so as to reinstate the last audited rate sheets submitted by the petitioners in 2000.
“An article 78 proceeding must be commenced within four months after the administrative determination to be reviewed becomes ‘final and binding upon the petitioner’ ” (Matter of Yarbough v Franco, 95 NY2d 342, 346 [2000], quoting CPLR 217 [1]; see New York State Assn. of Counties v Axelrod, 78 NY2d 158, 165 [1991]; Matter of Village of Westbury v Department of Transp. of State of N.Y., 75 NY2d 62, 72 [1989]; Matter of Brown v New York State Racing & Wagering Bd., 60 AD3d 107, 112 [2009]). However, the finality of any DOH determination that affects a facility’s Medicaid reimbursement rates is impugned when the DOH injects “ambiguity and uncertainty as to when and whether the determination became—or was intended to be—final and binding” (New York State Assn, of Counties v Axelrod, 78 NY2d at 166). “[W]hen an administrative body itself creates ambiguity and uncertainty . . . affected [parties] and their counsel should not have to risk dismissal for prematurity or untimeliness by necessarily guessing when a final and binding determination has or has not been made. Under these circumstances, ‘the courts should resolve any ambiguity created by the public body against it in order to reach a determination on the merits and not deny a party his [or her] day in court’ ” (Mundy v Nassau County Civ. Serv. Commn., 44 NY2d 352, 358 [1978], quoting Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126-127 [1969]).
A determination is not final and binding until its consequences are ascertainable and its impact can be accurately assessed (see New York State Assn. of Counties v Axelrod, 78 NY2d at 165; Matter of New York State Health Facilities Assn. v Axelrod, 199 AD2d 752, 753 [1993], revd sub nom. on other *643 grounds Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept, of Health, 85 NY2d 326 [1995]). Thus, the triggering act for a CPLR article 78 proceeding to challenge an ambiguous “final” administrative determination pertaining to Medicaid reimbursement is commonly the facility’s receipt of a rate recomputation notice apprising it of its actual reimbursement rates (see Matter of New York State Health Facilities Assn. v Axelrod, 199 AD2d at 753; Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 194 AD2d 149, 152 [1993], revd on other grounds 85 NY2d 326 [1995]; Matter of Westmount Health Facility v Commissioner of N.Y. State Dept, of Health, 205 AD2d 991, 993 [1994]).
The holdings of the Appellate Division, First Department, pertaining to the general finality of audits in Matter of Terrace HealthCare Ctr., Inc. v Novello (54 AD3d 643, 643 [2008]) and Concourse Rehabilitation & Nursing Ctr., Inc. v Novello (45 AD3d 366, 367 [2007]), as relied upon by the majority, differ factually from the instant case and, thus, are distinguishable.
Unlike Terrace HealthCare and Concourse Rehabilitation, the record here demonstrates that the DOH did not treat the results of the audits as final and binding against the petitioners until its issuance of revised Medicaid rate sheets in 2010, years after its last audit was forwarded to the petitioners. Instead, DOH officials acknowledged to the petitioners the inadequacy of existing regulations, worked on altering the basis for the audit determinations, and, despite downward adjustment in the subject audits, permitted categorization of neurobiological patients in the highest category while those officials endeavored to promulgate new regulations.
Not only did the DOH abstain from enforcing the subject audits, the earliest of which was performed in 2003, until 2010, but, throughout that time, the DOH continued to reimburse the petitioners based upon their pre-audit rate schedules from 2000. The DOH evidently did so acknowledging that the audits were predicated upon outmoded regulations which were not designed to address the needs of neurobiological patients. During this extended period of time, the DOH ignored several of its own regulations requiring it to periodically adjust the Medicaid reimbursement rates (see e.g. 10 NYCRR 86-2.11 [a], [d] [mandating periodic rate adjustment “to reflect changes in the case mix of facilities” and the “number of patients in each patient classification group”]). Such a substantial delay in enforcement lent itself to the petitioners’ reasonable view that the audit results were nonbinding and created uncertainty as to their actual impact when taken in conjunction with repeated as *644 surances from various DOH officials proffering operational and reimbursement cures to the admitted inadequacies inherent in the existing regulations in addressing neurobiolgical patients.
Unlike the circumstances in Matter of Alterra Healthcare Corp. v Novello (306 AD2d 787 [2003]), where the alleged injection of ambiguity by the DOH regarding the finality of its decision was predicated upon a single meeting and overwhelmed by consistent and repeated reaffirmations of the DOH’s asserted position (see id. at 788-789), here the DOH consistently and repeatedly undermined the finality of its determination with regard to determining the appropriate Medicaid reimbursement rates for the petitioners’ neurobiological patients.
Upon receiving the first disputed audit result in 2003, New Surfside commenced a proceeding pursuant to CPLR article 78 against certain DOH officials challenging the results, though the matter was subsequently marked off the calendar. Shortly thereafter, the DOH’s Director of the Office of Health Systems Management (hereinafter the Director) and several other high-level DOH officials convened with an attorney representing the petitioners. At that meeting, “[a] commitment was made that the [DOH] would review the staffing requirements for these [Neurobiological Program] residents and put forward reimbursement regulations for a new discrete rate category.” Moreover, the Director “agreed that the DOH would move forward with regulations to establish a new reimbursement category for neuro-biological residents.” Thereafter, DOH officials did work on analyzing and preparing new operational regulations and reimbursement provisions, while simultaneously refraining from enforcing the subject audit results against the petitioners. Written communications in 2003 and 2005 from the former Director of the DOH Bureau of Long Term Care Reimbursement stated that a commitment had been made that the DOH would review staffing requirements and move forward with proposed regulations. Proposed operational regulations for neurobiological units were published for public comment in 2008, although ultimately they were not adopted.
Through the actions and assertions of its officials, the DOH injected ambiguity and uncertainty as to when and whether the audit results were intended to be final and binding. Contrary to the DOH’s contention, the financial impact of the audits was not objectively “inevitable” under the circumstances. The finality of the audits did not become unequivocal until the DOH ultimately issued revised rate sheets to the petitioners in 2010. This proceeding was commenced within four months of the petitioners’ receipt of those rate sheets. Therefore, it was timely.
*645 On the merits, upon annulment of the challenged audit results and the determinations enforcing those results, the petitioners are entitled to rely upon the last audited rate sheets that they submitted in 2000.
Accordingly, I would reverse the Supreme Court’s judgment insofar as appealed from, and grant the petition to the extent indicated herein.